ROSS v. GATES, KENDALL and KANSAS CITY; GATES and KENDALL, Appellants.

Division One, July 1, 1904.

1. APPELLATE JURISDICTION: Title to Real Estate: Condemnations. A proceeding to have a portion of the proceeds of the damages awarded against a city in a proceeding to condemn land for a park and paid into court for the benefit of those whose land was taken for that purpose, applied to the payment of certain special taxbills which have in the meantime been issued against said lands for benefits thereto arising from the improvement of the street on which the land fronts, does not so involve title to real estate as to give the Supreme Court jurisdiction of the appeal on that ground. A special taxbill against land does not give the holder title to the land, and a proceeding for the enforcement of the lien does not involve title.

2. ———: Due Process of Law: Equal Protection: Front Rule. The assessment of benefits for a street improvement according to frontage, without reference to benefits, does not deny to the

owner equal protection of the laws or due process of law, but a plea that such assessment is repugnant to the fourteenth amendment to the U. S. Constitution so raises a constitutional question as to give the Supreme Court jurisdiction of the appeal.

3. SPECIAL TAXBILLS: Condemnation: Sharing Award: Interplea. The holders of special taxbills issued for a street improvement have the same right to share in the proceeds awarded against the city as damages for taking the land for a park that he would have had against the land had it not been condemned. And the court has the right to require such fund to be paid into court and to require all claimants to interplead for it.

4. CONDEMNATION: Relation. A judgment in a condemnation proceeding relates back to the institution of the suit and not to the passage of the ordinance authorizing the condemnation.

5. ———: ———: Special Taxbills. In a suit to share in the proceeds of damages awarded in a condemnation of land for a public park, by the owner of special taxbills issued against the land for the improvement of a street on which the land fronts, it is immaterial whether the contract for the improvement had been let, and the work entered upon before the condemnation proceeding was begun, especially if the owners of the land in the condemnation proceeding recovered for the enhanced value thereto caused by the improvement, for the money so awarded stands in the place of the land.

6. ———: Payment Into Court: Special Taxbill: Right of Lienor. Where land, against which special taxbills were ordered to be issued because of an improvement to a street in front thereof, has been condemned for a public park before the taxbills are paid, the money awarded as damages stands in place of the land, and the right of the owner of the land to have the award paid to him or into court for his benefit in a condemnation suit, as the Constitution requires, is in no wise impaired by giving the holder of the special taxbills for the improvement the right to share in the damages so awarded.

7. SPECIAL TAXBILLS: Condemnation Proceeds: Suit, When Begun. A suit begun by the holder of special taxbills to have the proceeds of damages awarded for the condemnation of the land, applied to the payment of the taxbills, is, under the charter of Kansas City, begun in ample time if begun before the last installment due on the taxbills falls due.

8. ———: Paving: Two Kinds of Material. Where the charter of the city gives the majority of the property-owners a right to select the materials to be used in paving a street, from not

less than two kinds of materials to be designated by the board of public works, an ordinance that provides that the property-owners may select the material to be used from asphalt, vitrified brick or macadam, is not void because it did not designate two kinds of macadam to be selected from. The word "pave" so used in the ordinance is a generic word, and means to place some substance on a street so as to form an artificial roadway, or a wearing surface, which shall change the natural condition of the street, and the requirements of the charter are met when the board designates at least two kinds of materials, not for macadamizing, but for the paving.

Appeal from Jackson Circuit Court.— *Hon. J. H. Slover*, Judge. '

AFFIRMED.

*Henry N. Ess* for appellants.

(1)   Plaintiff had nothing but taxbills. They are mere liens on land. They are not land or any interest in land. Sec. 18, art. 9, charter; sec. 23, same art.; sec. 2, art. 9; 1 Jones on Liens (Ed. 1888), sec. 10; Brown v. Pierce, 7 Wall. 217; Conard v. Ins. Co., 1 Peters 443; Watson v. Railroad, 47 N. Y. 162; People v. Railroad, 160 N. Y. 243, 176 U. S. 335, affirmed; Peck v. Fenness, 7 How. 620; Chouteau v. Railroad, 122 Mo. 387; Elliott on Roads (2 Ed.), sec. 308; Massingill v. Downs, 7 How. 767; Venable v. Railroad, 112 Mo. 103.   (2)   The obligation of the contractor's contract was not impaired. The assessments for benefits relate back to the date of approval of the condemnation ordinance, November 13, 1895. Charter, art. 10, sec. 20. Before a statute, law or ordinance can be held invalid as impairing the obligation of a contract, the statute, law or ordinance must be enacted after the contract. Waterworks v. Oshkosh, 187 U. S. 446; Waterworks Co. v. New Orleans, 185 U. S. 350; Pinney v. Nelson, 183 U. S. 147; McCullough v. Virginia, 172 U. S. 116; Water Co. v. Easton, 121 U. S. 391; Daggs v. Ins. Co., 136 Mo. 396.   (3)   The Constitution of the

State and the city charter provide for payment of "just compensation" to the owner or into court for the owner. The lienholder is not provided for either in the city charter or in the Constitution of the State. (4) It is said the taxbill is a lien; that is, just like a mortgage with the same rights in the property as a mortgagee; that a mortgage is nothing but a lien. We deny this doctrine. The mortgagee has the legal title in this State. He has more than a mere lien. He is an owner within the meaning of the law and Constitution of Missouri. Schanewerk v. Hoberecht, 117 Mo. 28; Gale v. Mensing, 20 Mo. 463; Railroad v. Green, 68 Mo. 176; Bowlin v. Furman, 28 Mo. 432; Walcop v. McKinley, 10 Mo. 230; Mayer v. Campbell, 12 Mo. 615. (5) The city's title dates back to November 13, 1895, more than two months before the paving contract was made, ten months before the taxbills became a lien. Were the taxbills liens on this fund when issued on December 15, 1896? Where is the provision of law for a taxbill on this fund? This statute makes the taxbill a lien on the land; if it intended the taxbill to be a lien on the condemnation money, why did it not say so? This statute provides that there shall be a judgment against the land in a suit wherein the owners of the land are parties and have notice. A special execution shall issue, the land be sold, certificate of purchase given. This omission to make the taxbill a lien on this fund and to provide for its enforcement can not be supplied by the courts. The affirmative specification that the taxbill is a lien on the land excludes the implication that it is a lien on the fund. Kansas City v. B. & L. Assn., 145 Mo. 53; Suth. on Stat. Con. (Ed. 1891), secs. 325-327. The omission to make the taxbill a lien on these funds can not be remedied by the courts. Hobbs v. McLean, 117 U. S. 579; Grace v. United States, 48 U. S. App. 231; Jones v. Smart, 1 T. R. 52; King v. Burrill, 12 A. & E. 470; Lamond v. Eiffee, 3 Q. B. 913; Bartlett v. Morris, 9 Porter (Ala.) 268; United States v. Railroad, 91 U.

S. 85; Denn v. Reid, 10 Peters 527; United States v.
Chase, 135 U. S. 261; Nichols v. Nichols, 147 Mo. 409;
Taylor v. Pullen, 152 Mo. 439. Any statute authorizing
a personal judgment against the owner is unconstitu-
tional and void. St. Louis to use v. Allen, 53 Mo. 44;
St. Louis v. Bressler, 56 Mo. 350; Carlin v. Cavender,
56 Mo. 289; Stadler, Admx., v. Roth, 59 Mo. 402; Sei-
bert v. Copp, 62 Mo. 186. (6) Taxes can not be turned
into judgments without special statutory authority.
Carondolet v. Picket, 38 Mo. 130; State ex rel. v.
Goodnow, 80 Mo. 275; State ex rel. v. Snyder, 139 Mo.
552; Otis Pearce v. City of Boston, 3 Met. 521; Turn-
pike Corporation v. Gould, 6 Mass. 44; Camden v. Allen,
2 Dutcher (N. J.) 401. (7) The taxbill is only a lien
on the land for a limited time. During that time no one
can acquire that land in any manner whatever without
taking it subject to this lien. This restriction does not
apply to the King, the State, the United States or the
Sovereign Power, wherever it may reside. Clinton ex
rel. v. Henry County, 115 Mo. 566; Wilson v. Berkley,
Plowden 236; Case No. 142 (Oct. 26, 1746), 1 Atkyn
261; 1 Blackstone's Comm. (3 Ed.), 261; 1 Kent,
Comm., star page 460; Black on Interpretation of Stat-
utes, p. 119; Sedgwick on Stat. and Cons. Law, 337;
Endlich on Interpretation of Statutes, sec. 161; State
v. Shelton, 47 Conn. 405; Commonwealth v. Hutchinson,
10 Pa. St. 466; Saunders v. Commonwealth, 10 Gratt.
494; People v. Rossiter, 4 Cowen 143; Johnson v. Au-
ditor, 78 Ky. 285; Inhabitants of Elizabeth v. Skillen,
79 Me. 594; Smith v. Hodson, 50 Wis. 282; Bradley v.
Bradley, 71 Ga. 78; United States v. Herron, 20 Wall.
255 (cited with approval in Lamp Chimney Co. v. Brass
& Copper Co., 91 U. S. 664). (8) The last installment
of the taxbills in controversy matured May 31, 1900.
The lien expired May 31, 1901. The statute require-
ments to prolong the lien beyond this time were not
complied with and could not be in this suit. The land
can not be sold in this suit.

*Amos H. Kagy* for respondent.

(1)   Appellants' first proposition is that Michael Ross did not own this land nor any interest in it.   We concede that the legal title to the land condemned in the proceedings to establish the "Parade," was in appellants Gates and Kendall, subject to the lien of the tax-bills issued against it, but contend that the contractor, Mahoney, did have an interest in it.   He had a lien or charge upon it, dependent only on the fulfillment of his contract; which lien attached when the taxbills were issued, December 16, 1896, the date of delivery.   Sec. 18, p. 153, city charter.   (2)   The third proposition in appellants' brief, is that the Constitution of the State and the city charter provide for payment of just compensation to the owner of the land taken for public use, and the lienholder is not provided for either in the city charter, or in the Constitution of the State.   This may be conceded as a correct statement, as a legal proposition, but it will not be maintained that because no remedy is provided, the contractor must lose his claim. *Ubi jus ibi remedium.*   Or, the rights of a lienholder can be adjudicated without his presence in court, nor that his rights can be prejudiced by a proceeding to which he was not a party.   This same constitutional provision invoked by appellants is as applicable to plaintiff, or to the contractor, Mahoney, as it is to appellants in this case.   We have seen that he was in court, and the fact that no special finding was made for him can not militate against his claim.   It is true that the lands of Gates and Kendall can not be taken for a public use without just compensation, and the Constitution does not make special provision for ascertaining compensation, for those who are not landowners.   The language is, "Private property shall not be taken or damaged for a public use without just compensation" (sec. 21, art. 2, Constitution) ; and it follows that land is no more private property than rock, lime, sand, cement and labor,

and if the city can not take land for a public use without just compensation, it can not take rock, lime, sand, cement and labor without just compensation—the very thing it did when it took these articles from contractor Mahoney, and laid them upon a public street, for a public use. Any other construction of this constitutional provision would be to say that the framers of the Constitution had in mind that private real estate only can not be taken for a public use without just compensation; but that private personal property may be taken without just compensation—*a reductio ad absurdum.* The fact is they had in mind that no property which is private, real, personal or mixed, shall be taken for a public use without just compensation.

MARSHALL, J.—This is a proceeding to have a portion of the proceeds of the condemnation of certain lands in Kansas City for park purposes, applied to the payment of certain special taxbills which were issued against the said land for benefits thereto caused by the improvement of the street on which the land fronted.

The facts are these:

The defendants Jemuel C. Gates and William W. Kendall were the owners of the land. On October 15, 1895, on the recommendation of the board of public works, the city council passed an ordinance entitled, "An ordinance to pave Fifteenth street from the west line of Virginia avenue to the east line of Woodland avenue as a business street." The ordinance recited that the board of public works had designated asphalt laid on concrete, vitrified brick laid on concrete, and macadam, consisting of six inches of native limestone, six inches of Bethany Falls limestone, and one inch of screenings, and including a brick-paved margin, as the materials which the owners of the majority of the front feet of the land fronting on the street, should have the right to select from for the improvement of the street. The ordinance contained other provisions for notice to

the property-owners, for the issuance of special tax-
bills, for the contract, etc., which it is not necessary to
set out herein.

On the thirteenth of November, 1895, the city
passed an ordinance to open and establish a public park
to be known as the "Parade." On the twenty-fourth
of December, 1895, the city entered into a contract with
John Mahoney, to macadamize said Fifteenth street,
pursuant to the terms of said improvement ordinance,
and the contractor immediately qualified and entered
upon the performance of his contract, the council hav-
ing, on January 24, 1896, passed an ordinance confirm-
ing the contract.

On July 1, 1896, the city instituted condemnation
proceedings under said park ordinance, in the circuit
court, and on August 7, 1896, a jury of freeholders was
impaneled to assess the damages for the taking of the
property for such park, all of which property belonged
to the defendants Gates and Kendall, and a portion of
which abutted the street to be improved as aforesaid.

On the fifteenth of December, 1896, Mahoney hav-
ing finished the work of improving the street, the city
issued to him three special taxbills for the sum of $747-
.81 each, payable in four annual installments of $186.05
each, against the property of the defendants Gates and
Kendall, and Mahoney assigned said special taxbills to
the plaintiff herein.

At the trial of the condemnation case the defend-
ants, Gates and Kendall, appeared in person and by
attorney before the jury and gave evidence of the value
of the land, including its enhanced value by reason of
such street improvements, and in fixing the value of the
land the jury took into account such enhanced value,
but did not state it separately.

On January 23, 1899, the jury found a verdict
whereby it assessed the damages to the defendants Gates
and Kendall for the taking of the land at the sum of
$142.50, and on January 13, 1900, the circuit court con-

firmed the verdict, but ordered that of the damages assessed the city should pay into court the sum of $3,634-.51, out of which said special taxbills and other taxbills not here in issue, should be paid, and the balance should be paid to the defendants Gates and Kendall, all of which the city did on July 27, 1900.

On December 28, 1900, the plaintiff instituted this action seeking to have said special taxbills paid out of the fund so reserved out of the proceeds of the condemnation of the land. The trial court ordered that said special taxbills aggregating, with accrued interest, $3,265.44, be paid out of the fund so in the registry of the court, and from this judgment the defendants appealed. ·

I.

*Jurisdiction.*

It is contended that this court has jurisdiction because the title to real estate is involved, but this is a misapprehension. The title to the land was duly vested in Gates and Kendall until it was divested by the judgment in condemnation. Mahoney, the contractor, and the plaintiff, his assignee, have no title to the land. They had a special taxbill against the land but that did not give them any title to the land, and no proceeding for the enforcement of the lien could involve the title to the land. [Hilton v. St. Louis, 129 Mo. 389; Balz v. Nelson, 171 Mo. l. c. 688.] This court, therefore, has no jurisdiction because title to real estate is involved.

The defendants in their answer, however, expressly pleaded that article 9 of the charter of Kansas City, under which the special taxbills were issued, is repugnant to the fourteenth amendment to the Constitution of the United States, and denies to them the equal protection of the law, and takes their property without due process of law, because it requires the special tax to be assessed on the abutting property according to frontage, without reference to benefits.

This raises a Federal question, which gives this court jurisdiction, but as the question was set at rest by the decision of the Supreme Court of the United States in the case of French v. Barber Asphalt Paving Co., 181 U. S. 324, nothing further is necessary to be said concerning it.

## II.

It is next contended by the defendants that while the contractor might have had a lien on the land by virtue of the special taxbills, he would have no right to the fund in court, and that he never even attempted to assign any right he may have had to the fund to the plaintiff.

The charter of Kansas City provides that where the title to any property to be taken is in controversy, or where there is any dispute as to what party or parties are entitled to the compensation arising from the taking or damaging of any property, it shall be settled by the circuit court in an action between the city and the parties claiming the same, and that pending the determination thereof, the court may order the money to be paid into court. [Sec. 7, art. 7, charter Kansas City.]

This affords ample authority in law for this suit. But even without this special charter provision it would be within the power of the court to order the fund paid into court and to require all claimants to interplead for it, or to permit any one claimant to maintain an action in the nature of an equitable garnishment against all other claimants and the city therefor.

When the money was paid into court, it represented, and stood in the place of, the land condemned, and the claimants had the same right to and interest in the money that they had had in the land. The defendants stood in the relation of owners to the money as they had stood as owners of the land, and the holder of the special taxbills was entitled to the same rights in the money that he had had in the land. The change of the

form of the *res,* did not change the rights of the owner and lienor respectively.

## III.

It is next insisted that the judgment of condemnation dated January 13, 1900, related back to the date of the passage of the condemning ordinance, which was November 13, 1895, and as this was two months before the improvement contract was entered into, on January 24, 1896, and ten months before the special taxbills were issued, on December 15, 1896, and as there is no provision of law making the special taxbill a lien on the fund, the special taxbill is cut out or at any rate can not be enforced against the fund.

It is true that for some purposes the judgment of condemnation relates back, but it relates back to the institution of the suit, on July 1, 1896, and not to the passage of the park ordinance, on November 13, 1895, and when the suit was instituted the contract had been let and the work was in progress.    But even this, or all that defendants claim in this regard, is wholly immaterial in this controversy between the owner and the lienor, for as pointed out the money stands in the place of the land, and in addition the defendants have recovered from the city the enhanced value of the land caused by the improvement, and the fund in controversy represents that enhanced value.

## IV.

It is contended that the Constitution provides that just compensation shall be paid to the owner, or into court for his benefit, for his land, and as no provision is made in the Constitution or in the city charter for a mere lienholder, he is not entitled to any part of the compensation, no matter what his right to the land may have been.

The constitutional guaranty referred to is in no manner impaired by preserving the rights of a lienor

in the proceeds of the condemnation in exactly the same degree as they existed in the land. Moreover, as shown herein, the charter of Kansas City affords express protection to the rights of the lienor, and without this the law affords ample protection therefor.

## V.

It is next contended that the taxbills were issued on December 15, 1896, payable in four annual installments, which defendants say fell due on May 31, 1897, 1898, 1899 and 1900, respectively, and that under section 23 of article 9 of the charter of Kansas City the lien of the taxbills continued for one year after the last installment fell due, which time expired on May 31, 1901, and as no suit was begun against the land on the special taxbills before that date, the plaintiff has lost all rights under the taxbills.

It is true that no suit was begun against the land, but this suit was begun on December 28, 1900, against the fund which represents the land, and hence it is within the time allowed by the charter.

## VI.

The defendants next claim that the taxbills are void because the ordinance provided that the street should be paved, and the contract was not to pave but macadamize the street; and further, that, under the charter, when a street is to be paved or macadamized as a business street, the owners of the majority of the front feet of the lands on the street have a right to select the material with which the street is to be paved or macadamized, from not less than two kinds of materials to be designated by the board of public works, and that in this case the board only designated one kind of macadam, and therefore the taxbills are void.

The charter of Kansas City gives the city power to pave, repave, block, reblock, gravel, regravel, macada-

mize or remacadamize its streets. [Sec. 2, art. 9, charter Kansas City.] And the charter also gives the majority of the property-owners a right to select the material to be used therefor, from not less than two kinds of materials to be designated by the board of public works. But it is a total misapprehension of the meaning of the charter to say that an ordinance which provides for the paving of a street can not authorize the street to be paved with asphalt or with vitrified brick or with macadam. In either event when the work was done it would be a paved street as contradistinguished from an unpaved one. The term "pave," in its generic sense, means to place some substance on a street so as to form an artificial roadway, or wearing surface, which shall change the natural condition of the street. The word is much more comprehensive than the term macadamize, but it embraces all that the term macadamize covers. The ordinance, therefore, is not subject to the criticism directed against it.

The ordinance provided that the property-owners might select the material to be used from asphalt, vitrified brick or macadam. It is claimed that the ordinance is void because the board of public works did not designate two kinds of macadam, for the property-owners to select from. It is likewise true that the board did not specify two kinds of asphalt or two kinds of brick.

The ordinance did specify the kind of asphalt, the kind of brick and the kind of macadam, which should be used, and gave the property-owners the right to make a selection therefrom. Asphalt, brick and macadam are all materials used for making streets. There are many kinds or manufactures of each kind of material. The requirements of the city charter are fully met when the board designates at least two kinds of material, each material to be of a kind, quality or make determined upon by the board. The charter never contemplated that the ordinance should give the property-owner a

selection between two or more kinds, qualities or makes of each material specified.

This contention of the defendants is therefore untenable.

Finding no error in the record the judgment of the circuit court is affirmed. All concur.