MICHAEL ROSS, Respondent, v. JEMUEL C. GATES et al., Appellants.

Kansas City Court of Appeals, February 5, 1906.

1. **APPELLATE PRACTICE: Res Adjudicata: Issues.** Though the opinion of an appellate court does not mention all the issues involved in the case, yet the courts are bound to assume that all presented were considered and determined.

2. **CONDEMNATION: Fund Paid Into Courts: Rights of Owner and Lienors: Taxbill Liens.** Taxbills though issued in series are respectively liens only on the individual lots against which each is issued; and where in a condemnation proceeding owners, lienors and the plaintiff agree that a certain amount of the condemnation damages shall be paid into court to relieve the condemned land of liens, such fund stands in lieu of the lots which are thereby released and the lienors and owner have the same rights in the fund they had in the land and the fact that the amount agreed to be paid into court is insufficient to pay the taxbill it was thought to cover will not make such bills a lien on adjacent lots against which the bills were not severally issued.

3. **TAXBILLS:** Limitations: Notice to Treasurer: Kansas City Charter. The last installment on·a taxbill was due on the 31st of May, 1900. Suit was brought on the 28th of May, 1901, but there was a conflict of evidence as to when notice required by the charter of Kansas City was served upon the city treasurer. *Held,* immaterial, since the notice to the treasurer is intended by the charter to serve as a *lis pendens* for the information and benefit of third parties who might become interested in the land, and has no application to a contest between the taxbill holder and the landowner.

4. **EVIDENCE:** Newspaper: Publication: Taxbills. A paper purporting to be an issue of the newspaper of a given date must be proved to be an exact copy of the regular edition of that date, since it cannot prove itself; and the fact that a legal publication does not appear in such unproven paper cannot overcome the ordinary proof of publication and the recitation in a taxbill.

Appeal from Jackson Circuit Court.—*Hon. James Gibson,* Judge.

AFFIRMED.

*Brown, Harding & Brown* and *Henry N. Ess* for appellants.

(1) The court erred in refusing to give instructions numbered 3 and 4 asked by defendants, and also in sustaining plaintiff's objections thereto. If the plaintiff filed the notice of bringing this suit on June 4, 1901, then he cannot recover. The lien expired on May 31, 1901 (Kansas City Charter, art. 9, sec. 23, pp. 163-4-5) ; Section 18, article 9, pages 152-3-4-5-6 of the City Charter does not and was not intended to apply. United States v. Fischer, 109 U. S. 143 at 145; Springfield v. Starkee, 93 Mo. App. 70 at 76. The intent controls. Sutherland on Construction of Statutes (Ed. 1891), p. 309, sec. 234-5; Endlich on Interpretation of Statutes, (Ed. 1888), p. 11 sec. 8; Art. 9, sec. 17, p. 151, City Charter; art. 9, sec. 18, p. 153, City Charter; 1 Greenleaf on Evidence (15 Ed.), pp. 630-1, secs. 483, 484; sec. 496, p. 644; Sandy White v. United States, 164 U. S.

100, at "Second," pp. 102-3; Evanstone v. Gunn, 99 U. S. 660; Galt v. Galloway, 4 Peters 332, at 342 bottom, and 343; Building & Planing Mill Co. v. Huber, 42 Mo. App. 437, 438; St. Louis v. Arnot, 94 Mo. 279; Kane v. School District, 48 Mo. App. 414, lower half of page; Reynolds v. Ins. Co., 88 Mo. App. 682-3-4; Ohmeyer v. Woodmen, 91 Mo. App. 200-1. (2) The court erred in refusing to give instruction numbered 6, p. 142, and numbered 10 on page 144. It seems that the mere handing of this notice to the city treasurer is a filing of the paper with him. Building & Planing Mill Co. v. Huber, 42 Mo. App. 438; State v. Grate, 68 Mo. 25-6; Grubs v. Cone, 57 Mo. 84-5; Rowe v. Schertz, 74 Mo. App. 608, top; State v. Hockaday, 98 Mo. 593; 1 Greenleaf on Evidence, sec. 79, p. 121, (15 Ed.); U. S. v. Railroad, 191 U. S. 92; State ex rel. v. Schar, 50 Mo. 394; State v. Lipscomb, 52 Mo. 33; State v. Meek, 70 Mo. 357-8-9; City of Kansas v. Muehlebach, 68 Mo. 640, and 641; State v. Hathaway, 115 Mo. 36; Richardson v. Drug Co., 92 Mo. App. 534-5; Railroad v. United States, 139 U. S. 567-8. (3) The ordinance requires publication of notice for public work to the lowest bidder, so as to allow competition. Art. 17, sec. 12 pp. 234-5, City Charter. (4) The notice was not in the regular edition. Plaintiff produced the Kansas City World of Friday, December 20, 1895, the four o'clock edition, vol. 2, No. 339. It was not in the other edition. The charter evidently is designed to let work to the lowest and best bidder. The notice must go in all the papers and not in the first edition only, and out of the rest. The court erred in refusing to give this declaration of law. (5) The plaintiff cannot come into court and get this condemnation money, and then on the same taxbills sell the land and get his money. By suing for the money in court he made his election and is bound by it. Boettger v. Roehling, 74 Mo. App. 257; Beagles v. Beagles, 95 Mo. App. 338, "6" of syllabus page 339 and page 348-9; Bank v. Totten, 94 Mo. App. 603-4; Bangs Milling Co. v. Burns, 152 Mo.

350, "2" of syllabus p. 350, and p. 370-1; Dry Goods Co. v. Warden, 151 Mo. 582, et seq; Stoller v. Coates, 88 Mo. 522-3; Robb v. Vos, 155 U. S. 38 to 43; Crescent Mining Co. v. Mining Co., 151 U. S. 322, bottom third of page; Peters v. Bain, 133 U. S. 695, bottom half of page; Manufacturing Co. v. The Attorney General, 124 U. S. 598, bottom and 599 and 600.

*Amos H. Kagy* for respondent.

Submitted an argument.

JOHNSON, J.—This is an action to enforce the collection of six special taxbills issued against land owned by the defendants on account of the improvement of the street in front thereof. The bills were issued against separate parcels of the land. All bore the same date December 15, 1896; belonged to the same series and were issued in payment of the cost of paving Fifteenth street in Kansas City between Virginia and Woodland avenues. Each bill was for the sum of $735.94, payable in four equal installments of $183.98 1-2 each, the last one of which matured May 31, 1900. The bills in issue here were numbered 61 to 66 inclusive, and bore interest at the rate of seven per cent per annum until maturity, after which the rate was fixed at ten per cent. The ordinance, under which the work was done, was passed October 15, 1895.

The petition in this suit, which was filed on May 28, 1901, is in twenty-four counts, each of the four installments in each bill being separately pleaded as a cause of action. On June 10, 1904, plaintiff recovered a special judgment upon each of the six bills in the sum of $1,307.72, the amount then due. The judgment foreclosed the lien of each bill upon the parcel of land therein described and concluded by ordering and adjudging "that plaintiff have and recover . . . the aggregate sum of $7,846.32, with interest thereon from

this date at the rate of ten per cent per annum . . . to be levied and collected out of the real estate above described, and have special execution therefor." On December 23, 1904, during the pendency of the motion for a new trial filed by defendants, plaintiff entered a remittitur of $3,614.05 and credited that sum upon the aggregate judgment. The motion was then overruled and defendants appealed. The sum remitted, $3,614.05, was the proceeds derived by plaintiff from another suit brought by him upon the bills numbered 61, 62, and 63, all of which are involved in the controversy before us. As that proceeding bears importantly upon the merits of the one in hand, a knowledge of its history is essential to a proper understanding of the present case.

On Novembe 13, 1895, the city, acting under article 7 of its charter, passed an ordinance to open and establish a public park to be known as "The Parade" and, on July 1, 1896, began condemnation proceedings in the circuit court of Jackson county under said ordinance. The parcels of land owned by defendants and described in taxbills 61, 62, and 63, were affected by that proceeding, but not those described in bills 64, 65, and 66. On January 23, 1899, the jury assessed the damages of defendants on account of the appropriation of their said land in the sum of $142,500 and, on January 13, 1900, the court confirmed the verdict, but ordered that of the damages assessed the city should pay into court the sum of $3,634.51 to be held as a fund out of which to pay valid special taxes against the land. All of the parties interested, plaintiff, defendants and the city, acquiesced in this judgment and no appeal was prosecuted from it. On December 28, 1900, plaintiff brought suit in the circuit court of Jackson county against the defendants here and the city, the real object and purpose of which was to secure a judgment for the payment of bills 61, 62, and 63, out of the fund reserved. Defendants answered attacking the validity of the bills and, with three

exceptions, raised every point against them that is now being urged. The trial court, however, sustained the legality of the bills and ordered the amount then due upon them, $3,265.44, paid out of the fund. From this judgment, defendants prosecuted an appeal to the Supreme Court and, on July 1, 1904, that court affirmed the judgment. [Ross v. Gates, 183 Mo. 338.]

When the judgment of $7,846.32 was entered in the present suit on June, 10th, 1904, one-half thereof, $3,923.16, represented the aggregate sum of the recovery upon the three bills involved in the other suit and, when credit was given upon the entire judgment on December 23, 1904, for the sum of $3,614.05, it left the sum of $309.11 unpaid on said taxbills together with interest at the rate of ten per cent per annum on the sum of $3,923.16 from June 10 to December 23, 1904; so that in the judgment before us, we find included the sum of $3,923.16, the total amount due on June 10, 1904, on taxbills 64, 65 and 66, and $309.11 then due on bills 61, 62 and 63; and on the judgment as it now stands, plaintiff is permitted to receive interest at the rate of ten per cent per annum on the full sum of $7,846.32 from June 10 to December 23, 1904, and thereafter interest on the full amount of the judgment and interest then accrued less the credit of $3,614.05, the effect of which is to allow plaintiff interest on bills 61, 62 and 63: on $3,923.16 from June 10th to December 23rd, and then interest on the remainder of that amount plus the accrued interest after deducting therefrom the credit of $3,614.05.

In the record before us, we find in evidence the pleadings and judgment in the Supreme Court case and from them are able to ascertain all of the issues involved in that proceeding. Some of these issues are not noticed in the opinion filed, but we are bound to assume that all presented were duly considered and determined by that court. We consider and treat that decision as a controlling authority upon all questions there under con-

sideration and determine here the questions alone that
do not appear in that case.

I. It is insisted by defendants that in accepting the
fund awarded him under the decision of the Supreme
Court and entering a *pro tanto* satisfaction of this judg-
ment, plaintiff elected to substitute that fund for his
liens upon the several parcels of land under all six of
his bills. This is not so. The condemnation proceed-
ings did not affect the parcels described in bills 64, 65
and 66 and therefore could not affect his liens under
them. The judgment recovered by plaintiff is *in rem*
and is, in fact, composed of separate judgments, each of
which is for the enforcement of a single taxbill. The
liens of these different bills do not cover the same prop-
erty, but are entirely separate and distinct from each
other, and their individuality is preserved in the judg-
ment. Therefore, any of them may be paid and released
without effect upon the others. The judgment liens un-
der bills 64, 65 and 66 were in nowise affected by the
payment made upon the other bills.

But the judgment, as it stands, is excessive in the
amount that represents a recovery upon bills 61, 62 and
63. When the city paid the full amount of the damages
assessed in favor of defendants in the condemnation case
and, in obedience to the order of the court, deposited in
court, out of that money, a fund which all parties ac-
cepted as sufficient to cover the liens of the three tax-
bills, the land described in them became released from
the liens and thereafter the fund stood for the *res* to
which the liens attached and the city took the land un-
burdened of liens. [City Charter, sec. 7, art. 7; Session
Acts 1893, sec. 9, page 53; Ross v. Gates, supra, 347.]
As stated by the Supreme Court in the case cited:
"When the money was paid into court, it represented
and stood in place of the land condemned and the claim-
ants had the same right to, and interest in, the money
that they had in the land. The defendants stood in the

relation of owners to the money as they had stood as owners of the land, and the holder of the special taxbills was entitled to the same rights in the money that he had had in the land. The change of the form of the *res* did not change the rights of the owner and lienor respectively."

The fact that the three bills grew by the accumulation of interest to exceed the amount of the fund was due to the prolonged litigation, but plaintiff had both right and opportunity to have the deposit made in a sum that would have covered the bills under likely contingencies. He took no steps to have it increased, doubtless because it then appeared to him as sufficient for all purposes. However this may be, he has no lien upon the land against which the three taxbills were issued and, as he has no personal judgment against defendants, there is neither person nor *res* liable for the payment of the remainder of these bills. It follows that when plaintiff received the fund, that portion of the judgment based upon bills 61, 62 and 63 was *ipso facto* satisfied and plaintiff will be required, as a condition of affirmance, to enter an additional remittitur that will confine his recovery to bills 64, 65 and 66.

II. Section 23, article 9 of the City Charter provides: "The lien of all taxbills issued under this section shall continue for a period of one year after the last installments specified therein shall have become due and payable, and no longer, unless within such year suit shall have been instituted to collect such taxbill and notice of the bringing of such suit shall have been filed with the city treasurer, in which case the lien of such taxbill shall continue until the termination of such suit and until the sale of the property under execution on the judgment establishing the same," etc.

The last installment fell due May 31, 1900, and to preserve the lien, it was necessary for plaintiff to bring his suit within one year from that date. His suit was

filed in time, on May 28, 1901, but the time when the no-tice of suit was filed with the city treasurer is a fact of serious dispute. By plaintiff, it is contended the notice was filed on May 28th, while defendants' evidence, which includes the testimony of the officials of the city, shows that it was not filed until June 4th. This issue of fact appears to have been resolved by the court in favor of plaintiff, but we may accept the evidence of defendants and yet sustain the validity of the liens. We consider the case of Haag v. Ward, 186 Mo. 325, 85 S. W. 391, as decisive of the question. It is true that case involved a different section of the Charter (section 18, article 9), but the principle announced applies with equal force in the construction of the section before us. The purpose of the provision is not to impart notice to the defendant owners of the land, for the suit itself does that. Evi-dently, it was the intention to have the notice operate as the equivalent of an ordinary *lis pendens* and to be for the information and benefit of third persons, who might be or become interested in the land. The provision has no application in a contest between the holder of the taxbill and the defendant owners in a suit brought for the enforcement of the lien.

III. The city ordinances contain this provision: "As soon as practicable thereafter, and after taking other requisite preliminary steps, in case a contract is to be let to the lowest and best bidder, the city engineer shall cause to be published for ten successive days, within the twenty days next preceding the time for opening bids. in the newspaper doing the city printing, or, if there be none, in such daily newspaper published in the city as he may select, a notice of the letting of the contract for such work to the lowest and best bidder."

The notice required under this section was pub-lished upon successive days in the Kansas City World, then the official newspaper. The first publication was on December 11, 1895, and the last on December 23rd.

The bids were opened, as advertised, on the 24th. A verified proof of publication was filed, in which the publisher stated that the notice was published every day during the period mentioned. During the trial, one of defendants' attorneys testified that he had the files of the paper from December 11th to December 23rd inclusive and that the notice did not appear in the issue of the 20th. He produced the papers and the copy of that date corroborated his statement. But he did not state, nor was it shown, where or how he procured the paper, nor that it was an exact copy of the regular edition of that day. The paper produced, therefore, came before the court without any evidence to authenticate it and, in receiving it in evidence, the learned trial judge permitted it to prove itself. Plaintiff was then, at his request, given time to "look for an additional paper" and reappeared with a copy of the paper of that date (found by him in the attic of the City Hall), which did contain the notice, but at the top of the front page in bold type were the words, "four o'clock edition." Defendants claim that these words stamp the paper as being one of a special edition, as distinguished from the regular edition, and that the notice, in order to meet the requirements of the law, should have been published in all of the editions, or, at least, in the one of acknowledged general circulation.

The taxbills themselves and the publisher's verified proof of publication were admitted in evidence. The former were prima facie evidence of the truth of their recitals and therefore prima facie proof of their regularity and the validity of the liens under them. The latter was additional prima facie evidence of the fact that the publication had been made in the manner required by the ordinance. Consequently, the burden of proof devolved upon defendants to show by competent evidence any infirmity in the publication that would invalidate the liens. This, they failed to do. To make the copy of the paper offered by them admissible, it was required of

defendants to authenticate it as being one of an edition put into circulation by the publisher. For aught disclosed, the paper may have been one of a number rejected by the publisher and not circulated because of the very fact of the omission of this notice from them through mistake, or it might have been a spoiled or bogus copy. Such possibilities furnish the reason for the rule requiring the production of some authenticating evidence, such as the testimony of the publisher himself or that of a subscriber to whom the paper was regularly delivered, or that of a person who purchased it upon the market. To complete the publication, the paper must not only be printed, but circulated, that is, it must appear that the series or edition to which the copy offered in evidence belongs was in fact circulated. The rule is well stated in Luffborough v. Parker, 16 Serg. & R. 351: "At the common law, a newspaper does not prove itself, evidence being always required that the copy produced is what it purports to be, not a particular thing fabricated perhaps for a sinister purpose, but an individual copy among many published collectively." [Comfort v. Ballingal, 134 Mo. 294.]

The fact that our statutes provide for the filing of the publisher's proof of publication in cases where notices and the like are required by law to be published is of itself a legislative recognition of the common-law rule requiring extrinsic evidence that the paper is what it purports to be. Defendants failed in their proof and this point must be ruled against them.

Other questions affecting the validity of the taxbills have all been settled by the Supreme Court and for that reason will not be noticed. The liens of bills 64, 65 and 66 are sustained and upon condition that within ten days from the filing of this opinion a remittitur is entered by plaintiff in accordance with the views expressed, the judgment is affirmed. All concur.