No. 10,075.

THE BOARD OF CAPITOL MANAGERS *v.* BRASIE, ET AL.

Decided April 3, 1922.   No change in opinion on rehearing November 6, 1922.

Proceeding to determine application of balance of award in a condemnation action.   Findings and decree for respondents.

### *Reversed.*

1.  CONDEMNATION—*Special Improvement Taxes—Payment.*   In a condemnation proceeding by the state to acquire a building site, the decree released the land from the lien of special city improvement taxes theretofore assessed, but not the money awarded by the decree, out of which, it is held the special improvement taxes should be paid.

*Error to the District Court of the City and County of Denver, Hon. Francis E. Bouck, Judge.*

Mr. VICTOR E. KEYES, attorney general, Mr. BENTLEY M. McMULLIN, assistant, for plaintiff in error.

Mr. JOHN R. SMITH, Mr. F. E. GREGG, for defendant in error.

MR. JUSTICE WHITFORD delivered the opinion of the court.

THE question here for determination is the disposition of the balance of a fund in the registry of the court below, deposited by the Board of Capitol Managers on an award of a jury in a condemnation proceeding to acquire a site for the state office building adjacent to the State Capitol grounds.

To bring about the determination of this question the respondent filed a motion asking that the amount then on deposit with the clerk of the court—$1256.90, or $915.57 plus $341.33—be paid over to respondent.   Attached to

said motion was an agreed statement of facts which, as far as material, is as follows:

"Agreed statement of facts to be considered by the court in deciding the motion of W. Worth Brasie concerning balance of money in hands of clerk of the court. * * *

"At or about the time the verdict was given and the decree entered in this case, a controversy arose * * * concerning the general taxes and certain special taxes commonly called 'Civic Center taxes.' The State of Colorado claimed that the said taxes should be paid out of the condemnation money and the respondent claimed that he was not obligated to pay the same or any part thereof and that the whole award should be paid to him. * * * That the said Brasie could take over $32,243.10 of said award without prejudice to his rights as to this question, and that the said balance remaining, viz: $1,256.90, should be left in the hands of the clerk or registry of the court, subject to the further order of the Court as to its proper distribution, that is, whether the whole of said balance of $1,256.90, or what part thereof, if any, should be paid to said Brasie, or whether the whole of said balance or what part thereof, if any, should be applied to the payment of said taxes, or either of said general taxes or said 'special taxes.' *. * *

"That the verdict of the jury was 'that the value of the land or property actually taken is $33,500.'" * * *

"On January 25, 1913, an assessment was made against the real estate (condemned in this proceeding) generally called the 'Civic Center tax' amounting to $1,119.33, which was payable in ten equal annual installments, the first of which installments became due and payable in January or February, 1918, and one-tenth annually each year thereafter, together with 5½% interest thereon. On January 30, 1918, the respondent Brasie paid the first installment and all interest then due, and on February 4, 1919, he paid the second installment and all interest then due up to March 1, 1919, thus leaving only the subsequent

eight installments to be paid, the first of which subsequent installments would be due and payable by February 29, 1920.

"At the time this controversy arose, the general '1919 taxes' were estimated at $341.33 and the balance due on account of said 'Civil Center tax' was figured at $915.57.

"In accordance with said stipulation the State of Colorado issued a 'voucher' for said $341.33 which voucher is still held by the Clerk of this Court, and a warrant was issued by said state for said $915.57, which warrant was cashed, and its proceeds are still held by said Clerk, all subject to the further order of the Court as herein set forth.

"The said general '1919 tax' was assessed against the condemned property in April, 1919, * * * and became due and payable one-half in January and one-half in July, 1920.

"* * * In December, 1920, the assessment upon which said tax was based was declared erroneous by the Board of County Commissioners of the City and County of Denver, because said property was, on the date of said levy, the property of the State of Colorado and therefore not taxable."

The court ordered the fund to be paid to the respondent. The Board of Capitol Managers brings error. It is now conceded that the question in controversy with respect to the general taxes of 1919 has been eliminated from consideration by the action of the board of county commissioners, and that the only question left for determination is whether or not the state is entitled to deduct from the amount of the award an amount sufficient to pay the special improvement "civic center taxes" with interest.

The decree in the condemnation proceeding divested the respondent of all title and vested it in the state of Colorado free and clear of any liens or encumbrances whatsoever, but it did not have the effect of extinguishing the lien or altering the obligation to pay the special taxes. The decree released the land from the lien, but not so with

the money arising out of the land. The effect of the decree was to transfer the lien from the land to the money in the registry of the court which was placed there as the equivalent of the land by virtue of the condemnation proceedings.

The Supreme Court of Missouri says:

"When the money was paid into court, it represented, and stood in the place of, the land condemned, and the claimants had the same right to and interest in the money that they had had in the land. The defendants stood in the relation of owners to the money as they had stood as owners of the land, and the holder of the special taxbills was entitled to the same rights in the money that he had had in the land. The change of the form of the *res,* did not change the rights of the owner and lienor respectively." *Ross v. Gates,* 183 Mo. 338, 347, 81 S. W. 1107, 1108.

The Supreme Court of New York says:

"The effect, therefore, of the confirmation of the report is to vest title in the city freed from any lien; and such liens as existed at the time of the confirmation are transferred from the land to the award made therefor, the money taking the place of the land." *Carpenter v. City of New York,* 60 N. Y. Supp. 633-635, 44 App. Div. 230-233.

The money in the registry of the court stood in the place of the land, and the court below fell into error in not so holding. So much of the funds in the hands of the clerk as may be necessary should be applied to the payment of the special improvement tax, with accrued interest thereon, and the remainder, if any, should be paid to the respondent.

The judgment is reversed and the cause remanded for further proceedings in conformity with the views here expressed.

Judgment reversed and cause remanded.

MR. JUSTICE TELLER sitting for MR. CHIEF JUSTICE SCOTT, and MR. JUSTICE DENISON concur.