LEGGETT, Respondent, v. LOUISIANA PURCHASE
EXPOSITION COMPANY, Appellant. .

**St. Louis Court of Appeals, November 5, 1908.**

1. **LANDLORD AND TENANT: Holding Over After Expiration of Term: New Agreement.** Where a tenant for a definite term holds over after the expiration of the term, the law presumes that he intends to continue the tenancy for the length of his original term and on the same terms in respect to rent, provided such holding over is with the consent and acquiescence of his landlord; but a new agreement between the landlord and tenant relative to continued occupancy of the leased premises precludes the landlord from charging the tenant with liability for a full term, or where the landlord leads the tenant to believe that he will not be charged for a full term, the tenant will not be liable.

2. ————: ————: **Negotiations for New Agreement: Intention.** Where a tenant began negotiations with his landlord before the expiration of his term for a new agreement and such negotiations continued until after the expiration of his term, if the tenant did not intend to act upon his proposed new agreement, he is held to another full term; but if he intended to carry forward such negotiations to a conclusion, then he was not answerable except for the time he occupied the premises.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

REVERSED AND REMANDED.

*Ferriss & Ferris* for appellant.

The common rule invoked by plaintiff in this case is a strict one applicable only where the holding over is a wrongful one, in which event the landlord has the option to treat the tenant, so holding over, either as a trespasser or as a tenant for a term of similar duration. Therefore, consent by the landlord to the holding over, or an election by him to treat the tenant in some other capacity, would prevent the landlord from subsequently holding the tenant for another term

of similar duration.  (a)  If the landlord consents to the tenant remaining in possession after the expiration of a lease pending negotiations for a new lease, the tenant becomes a tenant at will.  Jones on Landlord and Tenant, sec. 212; 18 Am. and Eng. Ency., p. 184, sec. 5; Doex v. Stennett, 2 Esp. 716; 24 Cyc., p. 1015, note 32; Grant v. White, 42 Mo. 285; Hammon v. Douglas, 50 Mo. 434; Wilgus v. Lewis, 8 Mo. App. 336; Smith v. Ault (N. Y.), 7 Daly 492; Schilling v. Klein, 41 Ill. App. 209; City of Dubuque v. Miller, 11 Iowa 583; Emmons v. Scudder, 115 Mass. 367; Hilsendigen v. Schleich, 55 Mich. 468.  (b)  It is not necessary in order to constitute a tenancy at will that the negotiations for a new lease should be had on the very day that the prior lease expires.  If the negotiations are begun before said day of expiration, and the tenant holds over pending their conclusion, or if the negotiations are not begun until after the expiration of the prior term, they are in either event conclusive evidence that the landlord elects not to hold the tenant for another similar term and will prevent him from subsequently making that claim.  Drake v. Wilhelm, 109 N. C. 97; Smith v. Ault, 7 Daly 492.

*R. L. McLaran* and *W. K. Koerner* for respondent.

(1)  By the common law a landlord may, at his option, regard the act of the tenant in holding over either as a trespass or as a renewal of the original lease. Quinette v. Carpenter, 35 Mo. 502; Finney v. St. Louis, 39 Mo. 178; Hunt v. Bailey, 39 Mo. 257; Insurance Co. v. Bank, 71 Mo. 58; Lewis v. Perry, 149 Mo. 257; Chaplin on Landlord and Tenant, p. 257; Taylor on Landlord and Tenant (9 Ed.), p. 29, sec. 22; 18 Am. and Eng. Ency. of Law, p. 405.  (2)  Where a party introduces parol evidence in support of an issue, the issue must be submitted to the jury and if the jury finds against the party having the affirmative of the issue, their verdict thereon is conclusive.  The evidence may

be all one way but it is for the jury to say whether they believe the witnesses or not.     Dalton v. Poplar Bluff, 173 Mo. 39; Ford v. Dyer, 148 Mo. 528; Gannon v. Gas Co., 145 Mo. 502; Gordon v. Burris, 141 Mo. 602; Huston v. Tyler, 140 Mo. 252; Land Co. v. Ross, 135 Mo. 101; Wolff v. Campbell, 110 Mo. 114; Gregory v. Chambers, 78 Mo. 294; Vaulx v. Campbell, 8 Mo. 224; Bryan v. Wear, 4 Mo. 106; Chinn v. Railroad, 100 Mo. App. 576.

STATEMENT.—On January 1, 1903, defendant leased from plaintiff premises known as Nos. 21-23 West Thirty-fourth street, city of New York, for a term of nine months, expiring September 30, 1903, at the rate of $3,000 per annum, payable in quarterly installments of $750.     Defendant occupied and paid rent for the premises until December 31, 1903, when it vacated. The action is to recover one quarter's rent, beginning April 1, 1904, upon the theory that by holding over after the expiration of its nine months' lease, defendant, at the option of plaintiff, renewed the lease for a new term of nine months.     The answer admitted the execution of the lease for nine months and that defendant occupied the premises until December 31, 1903, and set up as a special defense the following:

"That before the original lease expired, viz., October 1, 1903, defendant informed plaintiff:

" 'That it did not intend to renew the said agreement of tenancy; that thereupon the defendant and plaintiff entered into negotiations for a new agreement for the renting of aforesaid premises, that said negotiations covered many interviews, and continued after the first day of October, 1903, and until the seventeenth day of November, 1903, that the defendant continued to remain in possession of the said premises after October 1, 1903, by and with the consent and permission of plaintiff,' and that defendant vacated said premises on

December 31, 1903, after giving notice to plaintiff of its intention so to do November 17, 1903."

Verdict and judgment for plaintiff for $879.75, from which defendant appealed.

Under the pleadings, defendant assumed the burden of proof and in support of its special defense relied upon the evidence of McGibbons, its New York agent, and of Ashforth, plaintiff's New York agent. The evidence of these witnesses shows that about July 8, 1903, Ashforth wrote McGibbons a letter, inquiring whether or not defendant wanted to renew the lease. McGibbons answered that he did not know, and sent the letter to the Exposition Company at St. Louis, and about July 20th received a reply and telephoned Ashforth to come over, which he did and was told by McGibbons that defendant did not want to renew the lease but wanted a lease for six months (Ashforth testified that McGibbons told him defendant wanted the lease for six or seven months); that Ashforth informed him Mrs. Leggett, the owner of the property, was in Europe and he would have to submit the proposition to her; that about September 8th Ashforth made out and handed or mailed to McGibbons a written lease for seven months, on the same terms, in regard to rent, as the original lease. McGibbons mailed this lease to defendant at St. Louis. McGibbons had no authority to sign the lease for defendant; Ashforth knew this fact and understood that the lease would have to be sent to St. Louis to be signed by D. R. Francis, president of defendant company. No further communication was had between McGibbons and Ashforth until October 19th or 20th, when Ashforth telephoned McGibbons to know whether or not the lease had been signed and when informed by McGibbons that it had not, he said to him, "As you know unless the lease is signed, the Exposition Company will be responsible for the lease for a period of a year," but stated they would waive

that if the lease were signed. Nothing further passed between the parties until November 17th, when McGibbons served written notice on Ashforth that defendant company would vacate the premises on December 31st. The lease sent to St. Louis for the signature of Mr. Francis was never returned. Ashforth testified that he understood from McGibbons that defendant wanted a lease for seven months, that if he had not so understood he would not have drawn the lease for seven months; that he knew it had to be sent to Mr. Francis for his signature, but did not know it had to have his approval or consideration.

BLAND, P. J. (after stating the facts).—At common law where a tenant for a year or a shorter term holds over after the expiration of his term, the law presumes that he intends to continue the tenancy for the length of his original term and on the same terms in respect to rent, and all that is necessary to complete the contract for a new term is the consent or acquiescence of the landlord. But any new agreement between the landlord and tenant relative to the continued occupancy of the leased premises by the tenant precludes the landlord from charging the tenant with liability for a full term; and where the landlord by his conduct leads the tenant to believe that he will not be charged as tenant for an entire new term, the landlord cannot change his position and charge the tenant for an entire term. [Jones on Landlord and Tenant, sec. 210.] And when the parties are negotiating for a new lease and the tenant remains in possession pending the negotiations with the express or tacit consent of the landlord, the landlord cannot treat him as a tenant holding over for another term. [24 Cyc., n. 32.] In such circumstances he becomes a tenant at will. [18 Am. and Eng. Ency. of Law, p. 184, sec. 5; Grant v. White, 42 Mo. 285.]

The court gave the following instructions for plaintiff:

"1. The court instructs the jury that under the pleadings and the evidence in this case, their verdict should be for plaintiff, unless the jury believe from the evidence that on September 30, 1903, upon which date defendant's original lease of the premises here involved expired, plaintiff and defendant were negotiating for a new lease of said premises and it was their mutual intention and understanding that defendant's holding over and continuing to occupy said premises was not to create a new tenancy for the same term and under the same conditions as those specified in the original lease, or unless the jury believe from the evidence that thereafter plaintiff accepted the possession of said premises from defendant with the intention of releasing defendant from any further liability for rent therefor.

"2. The court instructs the jury that if they believe from the evidence that on or about the eighth day of September, 1903, plaintiff, through her agent, submitted a final proposition to defendant for a new lease of the premises here involved, then defendant was entitled to a reasonable time within which to accept such proposition, and if the jury believe from the evidence that defendant did not accept such proposition within what the jury may find from the evidence was a reasonable time under all the circumstances, then such proposition lapsed and was no longer in force, and if the jury further believe from the evidence that such proposition lapsed before defendant's original lease expired, and that defendant held over and continued to occupy said premises after the expiration of said original lease, then such holding over created a new tenancy under the same terms as specified in the original lease and your verdict should be for plaintiff, unless the jury further believe from the evidence that plaintiff there-

after released defendant from its liability to pay the rent under said new tenancy.

"4. The court instructs the jury that before they can find that at the expiration of defendant's original lease of the premises here involved, negotiations were pending between the parties for a new lease, they must find and believe from the evidence that the offer of a seven-months' lease made on or about September 8, 1903, by plaintiff's agent to defendant was still in force and had not lapsed."

The court gave the following instruction for defendant:

"1. The court instructs the jury that if you believe and find from the evidence that the defendant notified the plaintiff or her agent, before the expiration of the lease in evidence, that it would not renew said lease, and thereupon the plaintiff and defendant entered into negotiations for a new lease upon different terms, and that such negotiations continued until after the expiration of the term of the original lease, and that defendant held over with the consent of the plaintiff to await the result of such negotiations and that it was not the intent of the parties that defendant's so holding over should and would create a new tenancy for the same term and under the same conditions as those specified in the original lease, and that defendant removed from the premises in evidence on or about the thirty-first day of December, 1903, then you will find for the defendant."

Plaintiff's right to recover is conceded by defendant, unless negotiations were pending after September 30, 1903, the day on which the original lease expired. The uncontradicted evidence shows that negotiations for a new lease were put on foot about September 8th, by Ashforth handing an unsigned lease for seven months to McGibbons, defendant's agent, to be forwarded to St. Louis for the approval and signature of Mr. Francis, president of defendant company, or to be rejected by

him. This paper was never heard of afterwards, but on October 19th, Ashforth telephoned McGibbons to know whether or not the lease had been signed and returned, and when informed by McGibbons that it had not, replied, "As you know unless the lease is signed the Exposition Company will be responsible for the lease for a period of a year," and stated they would waive that if the lease was signed. This language strongly indicates that Ashforth was willing to extend the time in which the lease might have been signed: in other words, to keep the negotiations open. Therefore, it was error for the court to submit to the jury to find, as was done by plaintiff's second instruction, whether or not defendant had been given a reasonable time to accept or reject the proposed lease, for the parties could unquestionably hold the negotiations open as long as both consented thereto; and as the evidence tends to show plaintiff's agent treated the negotiations as open until October 19th, the real question in the case is whether or not defendant, at any time after the lease was received at St. Louis, took it up and considered it with a view of accepting or rejecting it, or held it for the purpose of misleading plaintiff, in order that it might hold on to the premises until it was ready to surrender them. If defendant, after receiving the prepared lease, did not take it up, or intend to take it up, but paid no attention to it, then negotiations were ended when defendant concluded not to act upon the proposed lease, and plaintiff is entitled to recover. On the other hand if defendant took up the lease, or intended to take it up and accept or reject it, then negotiations were pending, and according to the evidence were kept open as late as October 19th, and plaintiff cannot recover. For error pointed out in instruction numbered 2, given for plaintiff, the judgment will be reversed and the cause remanded. We discover no error in the other instructions given. All concur.