## JAMES, Respondent, v. INSURANCE COMPANY OF THE STATE OF ILLINOIS, Appellant.

### St. Louis Court of Appeals, January 12, 1909.

1. INSURANCE: Appraisal: Disagreement: Instruction. In an action on a fire insurance policy which provided for an appraisal in the event of a disagreement between the parties, where there was evidence tending to show that the adjuster for the defendant made a definite offer in settlement which the plaintiff refused, it was error to instruct the jury that if the adjuster did not in good faith try to agree with the plaintiff regarding the amount of the loss, but took the position that the sum he offered was all his company would pay, they should find for the plaintiff; the instruction is a commentary upon the evidence and is erroneous because suggestive that the offer of the defendant was proof that there was no attempt to agree in good faith regarding the amount of the loss.

2. ———: ———: ———: Attempt to Settle. In such action, where it was shown that the adjuster for the defendant conferred with the plaintiff, took his examination in writing, did not deny the liability, went over the invoices of goods purchased and had estimates made of the value of the salvage, and then the adjuster and the plaintiff made counter propositions looking to a settlement, this constituted an attempt to settle within the meaning of the law.

3. ———: ———: ———: Necessity of Appraisal. In an action on an insurance policy providing for an appraisal, where a portion of the goods covered by the policy were entirely destroyed and the plaintiff and the company agreed as to the value of the salvage, this did not dispense with the necessity of an appraisal in case of a disagreement as to the loss.

Appeal from Audrain Circuit Court.—*Hon. Jas. G. Barnett*, Judge.

REVERSED AND REMANDED.

*Barnett & Barnett* for appellant.

The court erred in refusing to give the instruction in the nature of a demurrer to the evidence, asked by defendant, at the close of plaintiff's testimony. The policy contains a provision that in case of a disagreement as to the amount of loss, that the said loss should be ascertained by appraisers in the manner provided in the policy, and that such appraisal is a condition precedent to the plaintiff's right to recover. Such provision is a valid condition in the policy and must be complied with. The burden is upon the plaintiff to secure an appraisal or to make an honest effort to bring about such an appraisal, and if he had not done so he cannot recover. Stevens v. Insurance Co., 120 Mo. App. 88; Murphy v. Insurance Co., 61 Mo. App. 323; McNees v. Insurance Co., 65 Mo. App. 44; McNees v. Insurance Co., 69 Mo. App. 232; Bailes v. Gilbert, 84 Mo. App. 675. No request was ever made for such appraisal. The insured must make an effort to bring about an appraisal under the terms of the policy, otherwise, no recovery. Land & Dry Dock Co. v. Assurance Co. (Cal.), 5 Pac. 236.

*P. H. Cullen* and *Fry & Rodgers* for respondent.

(1) It is a general rule that the insured will be released from compliance with a contract to submit the loss under a fire policy to arbitration as a condition precedent to bringing suit upon the policy, by any conduct on the part of the company which has the effect of preventing an appraisal from being had or an award from being made, and there is a waiver of arbitration by an implied refusal on the part of the company to submit. 4 Cooley, Briefs on Ins., p. 3658, 3660-61; Ball v. Insurance Co., 129 Mo. App. 40; Fowble v. Insurance Co., 106 Mo. App. 530; Cullen v. Insurance Co., 126 Mo. 420; McCullough v. Insurance Co., 113 Mo. 606; Johnson v. Insurance Co., 69 Mo. App. 226.

(2)   Any act inconsistent with an intention to arbitrate will operate as a waiver.   4 Cooley's Briefs Law of Insurance, p. 3669, and authorities supra.   (3)   An honest effort to agree with the insured must be made by the company before it can demand an appraisement. It is the duty of the insurance company to hunt out the insured and make an effort in good faith to agree as to the amount of loss or damage.   An unreasonable, arbitrary offer of an insignificant sum coupled with the statement, "take this or you get nothing," is insufficient to bring the arbitration clause into operation. Summerfield v. Insurance Co., 62 Fed. 249; Continental Ins. Co. v. Vanlandingham, 116 Ky. 287, 25 Ky. L. 468, 76 S. W. 22.   (4)   The courts of New York and other States hold that the standard policy provision that the loss or damage shall be ascertained by appraisers who shall separately state sound value and damage, has no reference to the property totally destroyed.   Lang v. Insurance Co., 42 N. Y. Supp. 539; Yendell v. Insurance Co., 47 N. Y. Supp. 141; Kahn v. Insurance Co., 62 Am. St. Rep. 47; Rosenwald v. Insurance Co., 3 N. Y. Supp. 215; 4 Cooley's Briefs on Law of Insurance, p. 3616.

GOODE, J.—While plaintiff held a policy of insurance in the defendant company, a fire consumed part of the insured property; a stock of drugs and other merchandise insured for one thousand dollars and some pool tables for two hundred dollars.   This action was instituted to recover the damages.   Several defenses were interposed; but we are concerned with only one of them, i. e., that plaintiff did not, before suing, take steps to have the amount of the loss ascertained by an appraisal.   The policy contained, among other clauses, one in the usual form regarding an appraisement, and providing that, in the event of disagreement in regard to the amount of loss, the same should be as-

certained by two competent and disinterested appraisers, the plaintiff and the company each selecting one, and those two choosing an umpire; further, that the appraisers should estimate the loss, stating separately sound value and damage, and failing to agree, should submit their disagreement to the umpire and the award of any two in writing should determine the amount of the loss. An adjuster of the company visited the scene shortly after the fire, but did not adjust the loss or, indeed, do much about it. The business books of the insured having been burnt, it was necessary for him to procure duplicate invoices of merchandise he had purchased in order that a computation might be made from them of the probable amount of the damage. He was examined in writing by the adjuster, and either said or was supposed to say, his current sales would average ten dollars a day. Three weeks later the adjuster returned, and plaintiff had then procured sufficient duplicate bills of his purchases to enable an estimate to be made of the loss. One pool table had been consumed and it was conceded plaintiff was entitled to two hundred dollars for its loss. The parties also agreed the value of the portion of the stock not burnt was $214. On the basis of plaintiff's purchases as shown by the invoices he submitted, and the amount of his sales at the supposed average of ten dollars a day, the adjuster computed plaintiff had had no goods burnt at all, as it appeared the total sales greatly exceeded the total purchases. It turned out there had been a misunderstanding regarding the amount of the daily sales, which averaged only two dollars or less, instead of ten dollars. During the parley between plaintiff and the adjuster, the latter said substantially this: the loss on the pool table was $200 and the salvage $214; that plaintiff might keep the salvage and the company would pay him $400 for his loss; $200 for the pool table and $200 for merchandise destroyed. The adjuster said he would do this, not in acknowledgment of any liability,

but to avoid trouble. Plaintiff refused to accept the offer and declared he would not take less than eight hundred dollars. Plaintiff's testimony conduces to prove he offered to have the loss appraised; indeed, that he offered to let the adjuster select a competent pharmacist to say what the loss was and plaintiff would abide by his decision. This offer was in addition to another made by plaintiff to let the company select one appraiser and plaintiff one, to determine the loss, which was a formal offer by plaintiff to submit to an appraisement according to the terms of the policy. The testimony of the adjuster went to prove there was no demand or offer by plaintiff for an appraisal and that the only conversation regarding the selection of some one to assist in the adjustment, related to the procurement of one or two competent pharmacists, to estimate the value of the portion of the stock which was not burnt. On this issue the court instructed that if the adjuster did not try in good faith to agree with plaintiff as to what the loss was, but instead took the position that it was not in excess of $400 and refused to pay more, and thereupon, when the adjuster said he would pay no more than $400, plaintiff offered to allow the adjuster to select a disinterested person to appraise the loss and the adjuster refused to appoint an appraiser, in such event there was no disagreement between the company and plaintiff as to the amount of the loss within the meaning of the policy, and the company waived its right to have its demand submitted to the appraisers. We consider that instruction erroneous for two reasons: first it includes an improper comment in emphasis of one bit of evidence, to-wit, the offer of the adjuster to pay four hundred dollars (Dermott v. Barnum, 19 Mo. 204; Spohn v. Railroad, 87 Mo. 74; Noyes v. Cunningham, 51 Mo. App. 199); and, second, it drew attention to an offer of settlement as a circumstance from which the jury might find defendant did not try to agree with plaintiff as to the amount of damage

done. The instruction is suggestive of the notion that if the adjuster offered to pay four hundred dollars and said he would pay no more, this fact proved he did not attempt, in good faith, to agree with plaintiff regarding the amount of the loss. The instruction reads, in substance, that if the jury believed the adjuster did not, in good faith, try to agree with plaintiff regarding the amount of the loss, but took the position that the loss was four hundred dollars and said he would pay no more, etc. Two hypotheses of fact were coupled together in that language as though one was consequent upon the other, when, in truth, they had no logical or necessary connection. It does not follow that the adjuster failed to attempt in good faith to agree with plaintiff as to the amount of the loss, because he declared he would pay no more than four hundred dollars. Neither did this declaration tend, under the circumstances in proof, to prove an arbitrary refusal to try to agree. According to the testimony for defendant, and there is none the other way, the proposal to pay four hundred dollars was in the nature of a compromise offer, made to avoid litigation over a disputed demand, just as plaintiff's offer to take eight hundred dollars was, and such an offer impairs no legal right. [Cook v. Insurance Co., 70 Mo. 610.] Two or more arguments are advanced in favor of the soundness of the instruction, or if unsound, against a reversal of the judgment. One is the asserted failure, as shown by the entire evidence, of the adjuster to endeavor to agree with plaintiff regarding the amount of the loss, and no doubt there must be an attempt to agree or the company will not be allowed to avail itself of an omission by the insured to demand an appraisal before suing on the policy, though it may avail itself of this defense if it had, in good faith, tried to agree with him. [Murphy v. Insurance Co., 61 Mo. App. 323; Cullen v. Insurance Co., 126 Mo. App. loc. cit. 421.] Suffice to say on this point, the usual efforts to ascertain the loss and come to a set-

tlement were made by the adjuster, and there is no indication that his effort was a sham. He conferred with plaintiff, took his examination in writing, did not deny liability, but went over the invoices of goods purchased and had competent persons estimate the value of the salvage. After this had been done he and the plaintiff made counter-propositions looking to a settlement. Such conduct constituted an attempt to settle within the meaning of the law (see cases *infra*), and distinguishes this case from Cullen v. Insurance Co., supra, wherein an arbitrary stand was taken by the insurance company that it would pay so much and no more, without an effort to ascertain what the actual loss was, and accompanied by much personal abuse of the insured and an absolute refusal to attempt an adjustment unless he would admit the total value of the goods destroyed was only five dollars.

Another contention is that as plaintiff and the adjuster agreed regarding the value of the portion of the stock not burned, and as the remainder of the stock was destroyed, there was no need for an appraisal because appraisers could not state separately the sound value' and the damage in conformity to the clause of the policy providing for an appraisal. This is a strained view of the meaning of the policy. The main purpose of the appraisal clause is to have the amount of loss ascertained by disinterested persons in the event of disagreement between the parties, so as to keep down litigation. In connection with an estimate of the loss, the appraisers are expected to state separately the value of the undamaged property and the amount of damage done to what is injured. In the present instance the appraisers could state the value of the sound property as agreed upon by the parties, and it would be their duty, also, to estimate the value of what was burnt. We would go far toward annulling the clause in question, were we to hold an appraisement was dispensed with in the event of a partial destruction of personal

property by the facts that part of the insured property was entirely destroyed and that plaintiff and the company agreed to the value of the salvage. The essential fact which would call into play the appraisement clause of the policy was a disagreement regarding the amount of the loss. These parties undoubtedly disagreed about that, as their counter-offers of settlement show. [Murphy v. Insurance Co., supra; Dautel v. Insurance Co., 65 Mo. App. 44.] Moreover, the value of the insured property was uncertain, it was not all consumed, and the quantity which was consumed was fairly in dispute. These facts called for an appraisal.

There was ample evidence to prove plaintiff offered to have the loss appraised and a charge to that effect, such as the one contained in the latter part of the condemned instruction, omitting the first part, would have been good; though, as given, the instruction was quite misleading.

The judgment is reversed and the cause remanded. All concur.