BESSIE McLEOD LEGGETT, Appellant, v. LOUISIANA PURCHASE EXPOSITION COMPANY, Respondent.

St. Louis Court of Appeals, May 2, 1911.

1. **LANDLORD AND TENANT: Holding Over After Expiration of Term: Tenancy Created: Common Law Rule.** At common law, if a lessee holds over after the expiration of his term, the law presumes he intends to continue the tenancy for a term of identical duration and on the same conditions  as to renta as stipulated for in the lease, and all that is necessary to complete the contract for such term is the acquiescence of the landlord; but a new agreement between the landlord and tenant relative to the continued occupancy of the leased premises precludes the landlord from charging the tenant for a full term, and where the landlord's conduct leads the tenant to believe he will not be charged for an entire new term, the landlord will not be allowed to change his position and charge the tenant for such term.

2. ——: ——: ——: ——: **Effect of Negotiations for New Lease.** Where a landlord and tenant are negotiating for a new lease at the time of the expiration of the original lease, and the tenant remains in possession pending the negotiations, with the express or tacit consent of the landlord, the tenant becomes a tenant at will and the landlord is estopped from treating him as holding over for another term on the conditions prescribed in the original lease.

3. **EVIDENCE: Res Gestae: Statements During Negotiations: Landlord and Tenant.** Where, in an action for rent, based on the theory that the lessee, by holding over, created a new term of the same length and for the same rental as provided in the original lease, the evidence showed that, before the term expired, a new lease was prepared by the lessor and delivered to the lessee for execution, and the lessee retained possession of

the premises, without executing the lease and without further communication with the lessor, until nineteen days after the expiration of the term, and the lessor treated the negotiations for a new lease as pending up to such time, evidence of letters from the secretary of the tenant to its agent occupying the leased premises, pertaining to the proposed new lease, and of conversations between the president of the tenant and its secretary, pertaining to the new lease and what instructions should be communicated to its agent concerning it, was properly received, as a part of the *res gestae*, to prove whether the lessee took up the lease submitted by the lessor and considered it with a view of accepting or rejecting it, or retained such lease for the purpose of misleading the lessor, in order that it might hold the premises until it was ready to surrender them; the question as to the intention of the lessee with respect to whether it considered the matter of negotiations for a new lease as open and pending being material to the determination of the question of its liability.

4. CONTRACTS: Negotiations: Parties. In order to have negotiations, there must be two parties to consider the matter.

5. EVIDENCE: Intention: Res Gestae. Where a matter turns on a question of intention, it is usually relevant to show the situation at the time, to reach the truth as to the intention.

6. LANDLORD AND TENANT: Surrender of Tenancy: Acts Constituting. To constitute a surrender by a tenant to his landlord, the landlord must take possession of the premises, with the intent of releasing the tenant from further payment of rent.

7. APPELLATE PRACTICE: Law of the Case. The sufficiency or correctness of instructions which conform to the views expressed by the appellate court, on appeal, will not be considered on a subsequent appeal.

8. INSTRUCTIONS: Refusal: Covered by Other Instructions. It is not error to refuse instructions which are substantially covered by other instructions given.

9. ———: ———: Comment on Evidence. A requested instruction containing an unwarranted comment on the evidence is properly refused.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams,* Judge.

AFFIRMED.

*Robert L. McLaren* for appellant.

(1) This case is governed by the law of New York, inasmuch as the property here involved is situated in that state, and the contract was both made and to be performed therein. Richardson v. De Giverville, 107 Mo. 422; Stix v. Matthews, 63 Mo. 371; Parks v. Ins. Co., 26 Mo. App. 511; Roach v. Type Foundry, 21 Mo. App. 1. (2) The common law is presumed to prevail in the state of New York. Edwards Brokerage Co. v. Stevenson, 160 Mo. 516; Sears v. Lum, 81 Mo. App. 607. (3) By the common law a landlord may, at his option, regard the act of the tenant in holding over, either as a trespass, or as a renewal of the original lease. Quinette v. Carpenter, 35 Mo. 502; Finney v. St. Louis, 39 Mo. 178; Hunt v. Bailey, 39 Mo. 257; Insurance Co. v. Bank, 71 Mo. 58; Lewis v. Perry, 149 Mo. 257; Chaplin on Landlord and Tenant, 257; Taylor on Landlord and Tenant (9 Ed.), 29, sec. 22; 18 Am. and Eng. Ency. of Law, 405. (4) The defense of "pending negotiations" rests upon the doctrine of estoppel. Jones on Landlord and Tenant, sec. 210. (5) Instruction No. 1 of the given instructions, given by the court, of its own motion, is erroneous for the reason that it tells the jury that they should determine whether or not negotiations were pending between plaintiff and defendant (the crucial point in the case), from defendant's secret acts and intentions which were not disclosed to plaintiff. Secret acts or intentions on the part of defendant, uncommunicated to plaintiff, could not have kept alive plaintiff's offer of a new lease, or continued this status of "pending negotiations." Lungstrass v. German Ins. Co., 48 Mo. 201; Cangas v. Rumsey Mfg. Co., 37 Mo. App. 297; Haubelt v. Mill Co., 77 Mo. App. 672; Arnold v. Casm, 95 Mo. App. 426. (6) The fact that this instruction substantially follows the language used by the court in its opinion on a previous appeal, does not necessarily make the instruction proper. The decision of the court on a previous appeal will not be permitted to stand as the law of the case where clearly

erroneous. Chamber's Admr. v. Smith's Admr., 30 Mo. 156; Hamilton v. Marks, 63 Mo. 167; Bealey v. Smith, 158 Mo. 512. Furthermore, the language of this previous opinion is difficult of construction, and instructions should be couched in plain, simple language, which the average juryman can understand. State v. Darling, 202 Mo. 150; Stanley v. Union Depot R. Co., 114 Mo. 606; State v. Pettit, 119 Mo. 410; Knapp v. Hanley, 132 S. W. 745. (7) It was error to admit in evidence the letters between defendant and Mr. McGibbons, and the conversation between Mr. Stevens and Mr. Francis. This evidence merely tended to show defendant's secret and undisclosed intention, which was immaterial. Authorities under No. 1 supra. (8) Number 5 of the refused instructions offered by plaintiff should have been given. It correctly states plaintiff's theory of the case with reference to defendant's second defense. Leggett v. Louisiana Purchase Exposition Co., 134 Mo. App. 175. And the refusal of this instruction is not cured by the giving of number 2 of the given instructions which covers the same ground in a general way. A party is entitled to a direct and positive instruction on his theory of the case. Cohn v. Reid, 18 Mo. App. 115; Bruce v. Wolfe, 102 Mo. App. 384; American Harwood L. Co. v. Dent, 121 Mo. App. 108; Wren v. Street Ry., 125 Mo. App. 604.

*Ferriss, Zumbalen* and *Ferriss* for respondent.

(1) The common rule invoked by plaintiff in this case is a strict one, applicable only where the holding over is a wrongful one, in which event the landlord has the option to treat the tenant so holding over either as a trespasser or as a tenant for a term of similar duration. Therefore consent by the landlord to the holding over, or an election by him to treat the tenant in some other capacity, would prevent the landlord from subsequently holding the tenant for another term of similar duration. Jones on Landlord and Tenant, sec. 210, 24 Cyc. pp.

1012-1013; 18 Am. and Eng. Ency., pp. 404, 407, sec. 3; Leggett v. La. Pur. Ex. Co., 134 Mo. App. 175. (2) If the landlord consents to the tenant remaining in possession after the expiration of a lease pending negotiations for a new lease, the tenant becomes a tenant at will. Jones on Landlord and Tenant, sec. 212; 18 Am. and Eng. Ency., p. 184, sec. 5; Leggett v. La. Pur. Ex. Co., 134 Mo. App. 175. (3) Instruction No. 1 of the given instructions, given by the court of its own motion, correctly defines the issue of pending negotiations as laid down in the opinion of this court in 134 Mo. App. 175. Said instruction is neither ambiguous nor confusing. It follows the law as announced in the last decision of this case, and that decision is correct. The prior decision of the court is binding on the circuit court and should be followed on the next appeal. May v. Crawford, 150 Mo. 525; Reilly v. Sherwood, 155 Mo. 37; Winter v. Supreme Lodge, 101 Mo. App. 550. (4) The letters between McGibbons and the secretary of defendant, as well as the conversation between the secretary and the president, were properly admitted in evidence. They were not offered to prove that plaintiff still held her offer open after October 1, but to prove that defendant had not rejected it prior to that date, but still held it under consideration. (5) The failure to give instruction No. 5 of refused instructions, offered by plaintiff, was not error, as the law was declared in exactly the same way in No. 2 of the given instructions. Flaherty v. Transit Co., 207 Mo. 318; Cytron v. Transit Co., 205 Mo. 692.

NORTONI, J.—This is a suit for an installment of rent. The finding and judgment were for defendant and plaintiff prosecutes the appeal.

It appears that defendant leased from plaintiff certain premises numbered 21-23 West Thirty-fourth Street in New York City for occupancy as its eastern office on January 1, 1903. The lease was in writing for a nine months' term at the stipulated rental of $3000 per year,

payable in quarterly installments of $750 each, in advance. Under the terms of the lease, the tenancy expired September 30, 1903. The premises were occupied by defendant through one McGibbons, its New York agent, who had charge of certain matters pertaining to soliciting exhibits, etc., for the World's Fair to be held in St. Louis in 1904. Some time in July, 1903, defendant's agent, one Ashforth, interviewed McGibbons with respect to renewing the lease and McGibbons advised him that he was not authorized to speak on the subject but would submit the matter to the officers of the Louisiana Purchase Exposition Company at St. Louis. In compliance with this promise, McGibbons wrote the secretary of defendant exposition company to the effect that plaintiff's agent desired to know the attitude of the company with respect to renewing the lease of the premises, and no definite answer was received. But it appears that finally defendant, through its secretary, instructed McGibbons to try to see if a new lease could be obtained for a period of six months and this proposition was submitted to plaintiff's agent, Ashforth. Plaintiff, the owner of the premises, was in Europe and considerable time was consumed in communicating with her about the matter. Plaintiff did not accept the proposition for a renewal of the lease for six months but afterwards, on about September 8th or 9th, Ashforth, her agent, submitted to McGibbons, defendant's New York agent, a written lease stipulating a tenancy for seven months from September 30, 1903, at the same rate of rental per month as that stipulated for in the former indenture. McGibbons forthwith transmitted the unsigned written lease to defendant's secretary, Mr. Walter B. Stevens, in St. Louis for the consideration of the company, and it appears that though he received it in due time it was not immediately accepted. While the matter thus obtained, the prior lease expired on September 30th and defendant continued in possession of the

157 App—8

premises without further communication with plaintiff's agent, Ashforth, until October 19th. It appears that on October 19th, plaintiff's agent, Ashforth, spoke to Mc-Gibbons about the matter, inquired if defendant's president, Governor Francis, had signed and returned the lease and was informed that he had not. Upon being so informed, Ashforth said to McGibbons that under the law of New York unless a lease is signed, the tenant becomes liable for a year's rental but in this case such would be waived if he got the lease signed. The lease was never signed nor returned to McGibbons, and on November 17th, defendant notified him that it would close its New York office on December 31st of that year. Immediately on receiving this information, McGibbons notified plaintiff's agent, Ashforth, that defendant would surrender the premises on that day. Afterwards, December 31st, defendant vacated the premises and returned the keys therefor to plaintiff's agent by depositing them in a box at his office, as the office was closed at the time. There is no controversy, however, over the fact that plaintiff's agent did not object to receiving the keys. Defendant paid the rent for the months of October, November and until December 31, 1903, but declined to pay rent thereafter. And it is said plaintiff received no rent from any source therefor until from and after the 1st day of July, 1904.

This suit proceeds for $750, said to have accrued under the common law rule with respect to the last quarter, as though a new lease had been entered into because of defendant's holding over. The $750 involved pertains to the last quarter, commencing April 1, 1904, and ending July 1st of the same year, as if a new lease were executed between the parties for nine months under the identical terms and provisions as contained in the prior one. Another suit, it is said, is pending in New York for the second quarter on the same theory.

At common law, if a tenant holds over after the expiration of his term, the law presumes he intends to con-

tinue the tenancy for a term of identical duration and on the same terms as to the rental as were stipulated for in the prior lease, and all that is necessary to complete the contract for such term is the consent or acquiescence of the landlord. But any new agreement between the landlord and tenant relative to the continued occupancy of the leased premises by the tenant precludes the landlord from charging him with liability for a full term, and where the landlord by his conduct leads the tenant to believe that he will not be charged as tenant for an entire new term, the landlord may not change his position and so charge him thereafter. [Jones on Landlord and Tenant, sec. 210.] However, when the parties are negotiating for a new lease at the time the prior lease expired and the tenant remains in possession pending such negotiations, with either the express or tacit consent of the landlord, the landlord is therby estopped from thereafter treating the tenant as holding over for another term on the same conditions as before. In such circumstances, instead of the relation of landlord and tenant continuing precisely as in the former lease, the tenant becomes a tenant at will and is treated with throughout the law accordingly. The law was so stated, or substantially so, on a prior appeal of this case, as will appear by reference to Legget v. Louisiann Purchase Exposition Co., 134 Mo. App. 175, 114 S. W. 92; see also 18 Am. and Eng. Ency. Law (2 Ed.), 184, 185; Grant v. White, 42 Mo. 285.

As before stated, the suit proceeds on the theory that by holding over, a new term was created for a period of nine months at the same rental agreed upon in the prior lease; but it can not be sustained, if it appears that negotiations were pending between the parties pertaining to a new term when the old one expired on September 30, 1903. By its answer, defendant set forth facts which, together with its admissions, show a prima facie right of recovery in plaintiff and pleaded in avoidance two affirmative defenses, the first of which

goes to the effect that negotiations for a new term were pending at the time the former lease expired and that defendant continued in possession of the premises with the acquiescence and implied consent of plaintiff during such pendency; secondly, that defendant paid all of the rent for the time it occupied the premises and surrendered possession thereof to plaintiff on December 31, 1903, and that plaintiff accepted such surrender. Defendant assumed the burden of proof, and on the trial the facts were made to appear as above set forth.

The principal argument for consideration on appeal relates to the action of the trial court in permitting the introduction in evidence of certain letters from the secretary of defendant exposition company to its agent, McGibbons, in New York, pertaining to the proposed lease which was submitted by plaintiff to defendant about the 9th of September, 1903, and to a conversation between Governor Francis, President of the Exposition Company, and Mr. Stevens, its secretary, pertaining to the proposed lease and what instructions should be communicated to McGibbons thereabout. It is argued these matters should have been excluded from the jury for the reason that the contents of the letters from defendant to its New York agent, McGibbons, were not shown to have been communicated to plaintiff at the time, and that the conversation between President Francis and Mr. Stevens was not had in the presence of plaintiff or her agent. On first impression, it would seem that the objection to such testimony should have been sustained, but we believe that, in view of other uncontroverted facts in the case and of the fact that the real issue or crucial question was whether or not defendant was actually considering the proposed new lease from September 9th or 10th until on and after the 30th of that month, when the old one expired, it was competent as of the *res gestae* to the end of elucidating defendant's intention on the question as to whether or not it was then considering the proposition for a new lease with the purpose of contract-

ing, or was merely delaying the matter with an ulterior motive. We say this in view of the uncontroverted evidence that negotiations were pending in good faith up to September 9th, when plaintiff submitted the lease for seven months to defendant's agent, McGibbons, in New York, who mailed it to defendant at St. Louis, and the further uncontroverted evidence to the effect that plaintiff actually treated the negotiations as still pending on October 19, or nineteen days after the time for the new lease had expired. Both defendant's agent, McGibbons, and plaintiff's agent, Ashforth, testified to the same effect, that Ashforth was urging McGibbons on October 19th to procure an acceptance of the proposition and return the lease signed at once. The case concedes that plaintiff's agent, Ashforth, said on that day that if the lease were executed and returned, the question of liability for a new term under the laws of New York would be waived. Indeed, the evidence is conclusive to the effect that, so far as negotiations were concerned on the part of plaintiff, they were pending up to October 19th and the real and only question in the case as to negotiations pending pertained to the conduct and intention of defendant, for, to have negotiations, there must be two parties to consider the matter, and it is the theory of plaintiff that defendant had concluded the whole matter and was no longer negotiating at the time, September 30th. In this view, it was determined on the former, or second, appeal that as the case revealed negotiations open on the part of plaintiff until October 19th, the real question for decision was as to whether or not defendant, at the time or after the lease was received in St. Louis, took it up and considered it with a view of accepting or rejecting it, or held it merely for the purpose of misleading plaintiff, in order that it might hold on to the premises until it was ready to surrender them. [See Leggett v. Exposition Co., 134 Mo. App. 175, 114 S. W. 92.] On a retrial of the issue, the court proceeded with the case in conformity to the view theretofore expressed

by this court and, as tending to elucidate the intention of defendant pertaining to this matter, received in evidence the conversation between Governor Francis, defendant's president, and Mr. Stevens, its secretary, together with the letters in compliance with President Francis' instructions to the agent, McGibbons, inquiring if a different arrangement could not be made with plaintiff. This evidence shows the lease was held by Secretary Stevens of the Exposition Company as "pending business" until he could bring it before President Francis, whose time was greatly preoccupied, and besides tends to prove that defendant was acting in good faith pertaining to the negotiation on its part. It was well known to plaintiff's agent that defendant's agent, McGibbons, was wholly without authority to consummate a lease and that he was acting only as an instrument of communication between Ashforth and the Exposition Company. And as her agent, Ashforth, was admittedly negotiating in good faith during all of the time, it seems defendant should have the benefit of such facts and circumstances as were available tending to prove it was doing the same. When a matter is to turn on a question of intention, it is usually relevant to consult such facts and circumstances as attend the situation at the time, in order to deduce the truth with respect to such intention. In this view, though it be true that the evidence complained of would ordinarily be denounced as self-serving declarations which impinged the rule against hearsay, we consider it competent under the exception to that rule pertaining to the *res gestae*. [See Greenleaf on Evidence (16 Ed.), sec. 108.]

A Massachusetts case is quite similar in this respect. There, the suit proceeded against defendant for rents on the theory that he had accepted the terms of a lease by retaining it. It was shown the lease had been signed by plaintiff, purporting to demise the premises and sent to defendant by his son who placed it upon defendant's desk. The Supreme Court declared that

though ordinarily what defendant said to his son at the time the lease was delivered about it would be hearsay as a declaration in his own interest not made in the presence of plaintiff, such statements were comptent under the exception to the rule as of the *res gestae,* for it elucidated his intention with respect to the matter. The principle of that case is relevant here in view of the issue on the particular facts of this one. [See Stevens v. Miles, 142 Mass. 571.]

The principal instruction for plaintiff complained of conforms precisely to the view expressed by this court on the former appeal and for that reason it will not be further considered.

On defendant's second defense, pertaining to a surrender of the premises, the proof showed that immediately after defendant removed therefrom, on December 31st, some one placed a desk and one or more chairs therein and that they were frequently seen in the office. It was further shown that defendant's agent delivered the keys of the premises to plaintiff's agent by dropping them into the mail box in the evening when the office of plaintiff's agent was closed and that such agent took charge of and retained the keys. For plaintiff, the evidence tended to prove that another tenant, an ice machine company, had left the desk and chair in the office for its own convenience and that plaintiff did not let the premises to another until July 1, 1904. On this feature of the case, the court correctly declared the law as to what is essential to operate a surrender, and required the jury to find, before sustaining this defense, that plaintiff took possession of the premises with the intent of releasing defendant from further payment of the rent. The rule of this instruction is the sound law on the question and conforms precisely to the opinion of this court on the first appeal. [See Leggett v. Louisiana Expo. Co., 121 Mo. App. 70, 97 S. W. 976.] Plaintiff requested an instruction on the same question from her standpoint which the court refused, but in view of that given by

plaintiff there was certainly no reversible error in refusing that of plaintiff. Furthermore, the instruction requested by plaintiff was properly refused for the reason that it contained an unwarranted comment on the evidence. [See Bank v. Enderle, 133 Mo. App. 222, 113 S. W. 262; James v. Ins. Co., 135 Mo. App. 247, 115 S. W. 478.]

We discover no reversible error in the record and the judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.