# CENTER CREEK MINING COMPANY, Appellant, v. FRANKENSTEIN.

### Division One, February 10, 1904.

1. **Landlord and Tenant:** OCCUPANCY WITHOUT CONSENT. The landlord's consent to the occupancy of his premises for several months can not be inferred from mere accupancy with his knowledge and without objection, nor can the relation of landlord and tenant be implied from such occupancy. Consent can not be implied from mere occupancy and silence.

2. ————: ————: EFFORTS AT SETTLEMENT. The evidence showed that the defendant had been occupying a small house on plaintiff's lot for six months, and that he had gone upon the premises without the landlord's consent, and that in response to a notice he called on plaintiff's agent with a view of adjusting their relations, and that he agreed that he would pay $1 a month rent for the six months on or before the next Monday, and that he would call upon the agent at that time and make the payment, but not returning, suit in ejectment was brought. *Held*, that there was nothing in these facts that made defendant a tenant of the landlord, and the bringing of the suit, whether before or after the Monday agreed upon, could not have the effect of creating a contract of tenancy.

Appeal from Jasper Circuit Court.—*Hon. Jos. D. Perkins*, Judge.

REVERSED AND REMANDED (*with directions*).

*W. R. Robertson* for appellant.

(1) The occupancy of the premises involved in this suit by defendant without any objection on the part of plaintiff did not constitute him a tenant at will of plain-

tiff.  It was not the duty of plaintiff to protest against the wrongful entry of defendant upon its lands, and even though plaintiff may have endeavored to collect rent from defendant and failed, that would not constitute him a tenant at will of plaintiff.   Childs v. Railroad, 117 Mo. 432; Dameron v. Jamison, 143 Mo. 491; Martin v. Knapp, 57 Ia. 342; Ridgley v. Stillwell, 25 Mo. 571; Young v. Ingle, 14 Mo. 427.  (2)  Intsructions 5 and 6 given on behalf of defendant are each fatally defective because they charge the jury that if they believe that defendant occupied the premises in controversy for the period of several months, and that plaintiff knew of such occupancy and made no objection thereto, such conduct tended to prove a tenancy at will of defendant.   This is not the law, as shown by the authorities above cited.

*Howard Gray* for arespondent.

BRACE, P. J.—This is an action in ejectment to recover possession of a small lot of ground in the northeast quarter of the northwest quarter of section 17, township twenty-eight, range thirty-two in Jasper county, described in the petition by metes and bounds.

The petition is in common form.  The answer is a general denial.  The case was tried before a jury—verdict and judgment for the defendant, and plaintiff appeals, assigning for error the instructions given and the admission of incompetent evidence for the defendant, and the refusal to give certain instructions for plaintiff.  The respondent files no brief.

On the trial the defendant admitted that he was in possession of the premises, and that the plaintiff is the owner thereof, and sought to defeat a recovery on the ground that he was a tenant at will of the plaintiff at the time suit was brought.

To support this defense evidence was introduced tending to prove that the aforesaid forty-acre tract was mining land within a mile of Webb City.  That prior

to the first of January, 1900, a number of lots had been enclosed and small houses built thereon, of which the lot in question was one, and of which fact the plaintiff had knowledge. That on the lot in question was a small box house of one room twelve by fourteen feet. That about that date defendant purchased the house from ''a couple of young men called the Gray boys.'' That the house was then vacant. That the defendant went into the possession of the same without the knowledge or consent of the plaintiff and thereafter continued in the occupancy of the same. That there were a number of houses on the tract occupied. That sometime prior to the ninth day of May, 1900, the plaintiff employed W. R. Robertson, Esquire, a lawyer, to adjust the relations between the plaintiff and such occupants. That in pursuance thereof a notice was mailed to each of such occupants, of one of which the following is a copy.

"Webb City, Mo., May 9, 1900.
"James Brown, Carterville:

"Dear Sir:—The Center Creek Mining Company has employed me to obtain possession of its land occupied by you. If you desire to adjust the matter without litigation, please call at my office over Exchange Bank before the eleventh inst. and submit such proposition as you desire to make for that purpose.

"Yours truly,
"W. R. ROBERTSON."

The defendant testified that he received the notice addressed to him, that as it gave him only one day's time, he went to the office of Mr. Robertson as soon as he received it, which he thinks was on Thursday, and as to the interview then had between them, testified as follows:

"Q. Did you go to see him? A. I went as soon as I got the notice, and seen Mr. Robertson.

"Q. Tell the jury what conversation or arrangement you had with Mr. Robertson? A. Well, the claim

was $1 a month back rent for a year, and as I wasn't living there the year before—I lived in the Indian Territory the year before—I didn't feel justified in paying the rent for the time I was in the Indian Territory, paying rent on a piece of ground here, so I told him so. 'Well,' then he said, 'We will drop that and we will just make it one dollar a month from the time you moved in.' I told him that would be all right, and I believe it amounted to $6, if I am not mistaken. From the time I moved in until the time I went to his office, that was. 'Well,' says he, 'can you pay it right now?' and I told him, 'No.' I didn't have the money, but I could pay it Monday morning, as we were paid late on Saturday night, after dark mostly. That I couldn't make it until Monday morning. 'Well,' says he, 'if you come here Monday morning before eight o'clock and bring me the money it is all right, for at eight o'clock I have got to go to court, and will not be here.' I told him I will be there faithfully eight o'clock Monday morning. Friday I got notice that he had sued and I had to appear at Joplin court.''

He further testified that he did not return to the office of Mr. Robertson on the following Monday morning, or at any time thereafter, because on Friday he was served with process in this action. The day on which the notice was dated and mailed was Wednesday the ninth of May, 1900. The eleventh was the following Friday. The following Monday was May the fourteenth, and this suit was instituted on Wednesday the sixteenth of May. This is the substance of the pertinent evidence in the case.

The court refused an instruction asked by the plaintiff, that no tenancy at will had been proven in the case, and among others gave the following instructions for the defendant:

"5. The court instructs the jury that in order to constitute the defendant a tenant at will it is not necessary that the jury find that there was an express con-

tract between the plaintiff and the defendant, or the person under whom the defendant claims, that he could occupy the premises in controversy as the tenant of the plaintiff, but the jury are instructed that an implied agreement to occupy would be sufficient and if the jury find from the evidence that the defendant occupied the premises in controversy · for the period of several months, and that the plaintiff knew of such occupancy and made no objection thereto, then from such facts, the jury may find that the defendant occupied the premises with plaintiff's consent, as a tenant at will of the plaintiff.

"6. The court instructs the jury that if they find from the evidence in this case that during the time the defendant occupied the premises in controversy, the plaintiff by its officers or agents knew of such occupancy and made no objection thereat, and attempted to collect rent from the defendant, and that the plaintiff and defendant disagreed as to the amount of rent the defendant should pay for the use of such premises, then the jury would be authorized from such facts to find that the defendant occupied said premises with plaintiff's consent and as a tenant of the plaintiff and if they so find, the verdict should be in favor of the defendant.

"7. The court instructs the jury that if they find from the evidence that the plaintiffs, by and through its agent, W. R. Robertson, agreed that the defendant might occupy the premises sued for if he would pay rent for the time he had occupied the same at the rate of one dollar per month, and also that he was to pay one dollar a month for the future rent of said premises, and that he was given until the following Monday to pay his rents and that said Robertson was authorized by plaintiff to make such agreement and that before said Monday this suit was brought, the verdict should be in favor of the defendant."

The law applicable to the facts of the case is stated by the textwriters. In 1 Taylor on Landlord and Ten-

ant (8 Ed.), sec. 21, as follows: "The mere occupancy of property does not necessarily imply the relation of landlord and tenant, for if no rent has been paid, and no concurrent act of the parties, or other circumstances, exists, from which consent to a tenancy on the part of the owner may be inferred; or if the consent was conditional and has since been forfeited, a tenancy can not arise from mere occupation. And if a man gets possession of a house without the privity of the owner, although the parties may afterwards enter into a negotiation for a lease, but differ about the terms, and the negotiation goes off; or if, after being let into possession, under an agreement to sign a written lease, and find surety for the rent, he does neither; no species of tenancy is created, but the occupant, in either case, becomes a mere trespasser."

And in 18 Am. and Eng. Ency. Law (2 Ed.), p. 165, as follows: "If one enters upon the land of another without right, and not in subordination to the title of the owner, he is a mere trespasser and the relation of landlord and tenant is not created between such occupant and the owner so as to authorize either the former to claim the rights of a tenant or the latter to claim the rights of a landlord. After a person has entered upon land without right, the relation of landlord and tenant may, of course, subsequently arise by implication; and it has generally been held that such relation arises where the occupant admits the title of the owner of the land, and agrees to hold in subordination to his title. Still, mere negotiations between the occupant and the owner, which have no result and which do not amount to a recognition of the owner as landlord, will not create the relation of landlord and tenant."

Applying these principles to the instructions given for the defendant on the evidence in this case, each of them will be found to be erroneous. By number 5, the jury are told that from the mere occupancy of the premises by the defendant for several months, i. e. from

about January first to the ninth of May, 1900, without objection, and with the knowledge of the plaintiff, the plaintiff's consent to such occupancy could be implied, and the relation of landlord and tenant created, although the undisputed evidence of both parties was that such occupancy was without the consent of the plaintiff, that no communication was ever had between them in any manner whatever prior to the ninth of May, that no rent had ever been paid; and there was no evidence of any concurrent act or circumstance tending to show such consent. This proposition is absurd as applied to the evidence in the case; and to imply consent from mere knowledge and silence when there is no obligation to speak is equally absurd as an abstract proposition. There is no such *facile* mode as this of converting a trespasser into a tenant without the consent of the owner.

By the other two instructions a relation of landlord and tenant between the parties is predicated upon the negotiations testified to by the defendant between him and Mr. Robertson which *might* have resulted in a contract by which the defendant *would* have become a tenant of the plaintiff *if* he had appeared at the office of Mr. Robertson on the Monday morning following the interview, and performed the conditions agreed upon, *but* which resulted in nothing by reason of his failure to so appear, and perform those conditions, then or at any time thereafter, therefore no tenancy could be implied from those negotiations. Hence these instructions are both erroneous. The first is further erroneous in that there was no evidence to sustain the hypothesis that the defendant and Robertson disagreed as to the amount of rent defendant should pay; on the contrary, the evidence of the defendant himself was positive as to their agreement as to amount and there was no evidence to the contrary. The other of these instructions is also erroneous in that there was no substantial evidence tending to prove that "the suit was brought after the

interview between defendant and Robertson and before the following Monday.'' There is a conflict in the evidence of defendant on this subject, some of it tending to prove that the interview was on Thursday, the tenth of May, and some of it, that it was on Thursday, the seventeenth of May. The suit was brought on the sixteenth of May. If the first theory be correct, then the suit was brought after the Monday on which the defendant agreed to return; if the other be correct, then the suit was brought before the Monday on which defendant was to return and before the Thursday upon which the interview was had, but in neither event was the suit brought after the interview and before the Monday on which defendant was to return. But this is a matter of minor importance, for in any view thereof, while the bringing of the suit might in one view furnish a reason or at least an excuse for the defendant's not returning and performing the conditions by which a contract of tenancy between him and the plaintiff would have been created, it could not have the effect of creating such a contract. The court erred in giving these instructions, and also in refusing the instruction for plaintiff aforesaid, which was tantamount to an instruction to return a verdict for plaintiff, and would have been better in that form. For these errors the judgment will be reversed, and as the plaintiff now here waives its claim for damages and monthly rents and profits, the cause will be remanded to the circuit court with directions to enter up judgment for the plaintiff for the possession of the premises.

All concur.