## JAMES E. PERKINSON v. GERTRUDE WEBER et al., Appellants.

### Division Two, June 17, 1913.

1. **SPECIAL TAX BILL: Park Within Benefit District: Appropriation in Excess of Tax Assessed Against City.** Where the charter provides that three-fourths of the costs of a street improvement shall be levied upon the area of land included in a benefit district formed by drawing a line midway between the street to be improved and the next parallel or converging street on each side, and the city appropriates $6200 to pay its share of the area costs which could have been assessed against a part of a public park included within the benefit district had it been private property, and which, being public property, was not subject to taxation, private owners of property within the district cannot complain that only $5180.92 of the money appropriated by the city was applied towards paying the costs of the street improvement. The city could not anticipate just what would be the costs of the improvements, and because out of abundant caution it appropriated more than was needed to pay its share is no reason for applying the excess to lessening the share the other property-owners should pay.

2. ————: **Benefit District: Inclusion of Public Street.** Whether or not the city, in prescribing the boundaries of the benefit district, under a charter which requires three-fourths of the costs of the improvement to be assessed according to the area-rule against the lands within the district, wrongfully ignored a publc street and thereby increased the taxes of the private owners whose lands abutted on said street, depends on whether or not it was a public street, either by dedication, prescription or condemnation; and in this case the evidence is reviewed and held not to show a public street.

3. ————: ————: ————: **Condemnation: Prior to Improvement: Evidence: Estoppel.** A final decree in condemnation of a street relates back only to the institution of the suit; and if at that time the benefit district for the improvement of another street had been so formed as to include the area afterwards condemned for the street as a part of defendants' land, and said other street had been fully improved and the tax bills had been issued and become a lien on defendants' lands, it will not be held that the city wrongfully counted the area which afterwards became a part of the street so condemned as a part of defendants' land. And the fact that, before defendants were sued on the tax bills, they made demand for

damages for the land taken for the street in the condemnation proceeding, is a very significant fact in determining whether or not it was an existing street when the benefit district was established, and almost amounts to an estoppel to their claim that they had previously dedicated or intended to dedicate the strip for a street.

4. ————: Decree: Affirmative Defenses. When the trial court held the special tax bills valid, it was not required in its decree to directly dispose of that part of defendants' answer which demands a cancellation of the tax bills as casting a cloud on their title.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey*, Judge.

AFFIRMED.

*H. A. Loevy* for appellants.

(1) The strip of ground which was known first as Fifteenth, then as Twenty-first street, and was in fact a continuation or prolongation of Twenty-first street, was a public and legal street. (2) The tax bills are void because this street was ignored in making out of the bills sued on. (3) The tax bills are excessive and consequently void because the property-owners are required to pay $1000 which the city of St. Louis should pay. (4) The decree is not responsive to all the issues in this: there is no adjudication as to issues raised by the new matter pleaded in the answer.

*Kinealy & Kinealy* for respondent.

(1) Appellants did not show that Twenty-first street was a public street by dedication through their property. To do that they would have had to prove an intention on their part to dedicate the land to public use and an acceptance by the city. Bauman v. Boeckler, 119 Mo. 200; Collier Est. v. Western P. & S. Co., 180 Mo. 388; Benton v. St. Louis, 217 Mo.

702. (2) Nor did they show it was a public street by prescription. For that purpose it would have been necessary to prove open, continuous and adverse use by the public for the prescription period. Field v. Mark, 125 Mo. 516; Chillicothe v. Bryan, 103 Mo. App. 415; Collier Est. v. Western P. & S. Co., 180 Mo. 388. (3) Twenty-first street was not a public-street through appellants' property until made so by the judgment in the condemnation proceedings instituted by the city. Ross v. Cates, 183 Mo. 348; Kansas City v. Railroad, 189 Mo. 259; Sylvester v. St. Louis, 164 Mo. 601. (4) The city was properly charged only with the amount due from it on account of the ownership of Hyde Park based on the contract price for doing the work. Charter, art. 6, secs. 14, 27 and 28; *Id.*, art. 5, secs. 11 and 12; *Id.*, art. 4, sec. 21. An appropriation is merely setting aside a fund to be drawn upon. Champagne v. U. S., 26 Ct. Cl. 316. (5) The judgment disposed of all the issues in the case.

BROWN, P. J.—Action to collect special tax bills against defendant's real estate in the city of St. Louis. From a judgment for plaintiff in the circuit court of that city, defendants appeal.

Plaintiff's tax bills were issued against some unplatted land between Twentieth street and Florissant avenue in St. Louis City, to cover part of the expense of improving Twentieth street. Said Twentieth street runs north and south through said city.

Under section 14, article 6, of the charter of St. Louis, street improvements may be paid for by special assessments against the property fronting or adjoining the improvements; one-fourth of such special taxes being levied upon the frontage of the street to be improved, and the remaining three-fourths upon the area of land included in a benefit district formed by drawing a line midway between the street to be improved

and the next parallel or converging street on each side of the street to be improved.

The benefit district formed for the improvement of Twentieth street included a strip of Hyde Park, which, as its name indicates, is a public park of the city not subject to taxation; so that the legislative department of the city in the ordinance which provided for the improvement of said Twentieth street, appropriated $6200 out of the city treasury to cover that part of the expense of the proposed improvement which it was estimated would have been levied upon Hyde Park if such park had been private property.

. Defendants in their answer to plaintiff's petition allege that the tax bills sued on are excessive and invalid for the following reasons:

(1) That only $5180.92 of the money appropriated from the city treasury was applied towards paying for the improvement of said Twentieth street, and the remainder of the cost of said improvement was wrongfully taxed against the property of defendants and other persons owning lands in the benefit district.

(2) That in creating and prescribing the boundaries of the benefit district for improving Twentieth street, the city, through its officers, wrongfully ignored a public street known as Twenty-first street lying between Twentieth street and Florissant avenue, and included too much of defendants' lands in the benefit district, thereby unlawfully increasing the size of the tax bills assessed against defendants' property.

Defendants in their said answer demand the cancellation of the tax bills on the ground that they are invalid and a cloud upon the title of defendants. .

For the reason that defendants' answer and prayer are for affirmative equitable relief, the circuit court tried the case as an action in equity.

The existence or non-existence of Twenty-first street as a public thoroughfare of St. Louis at the time the benefit district was formed for the purpose of im-

proving Twentieth street is the chief bone of con-
tention between plaintiff and defendants.    For the
purpose of making the opinion as brief as propriety
will admit, we will consider the evidence regarding
Twenty-first street in our opinion.

I.   The insistence of defendants that the officers
of St. Louis City committed error in failing to apply
all of the $6200 appropriation towards
**Appropriation.** improving Twentieth street before pro-
rating and assessing any part of the expense of im-
proving said street against the property of defend-
ants cannot be sustained.

By section 28, article 6, of the charter of St. Louis
when any ordinance is enacted by the municipal assem-
bly of that city calling for work to be paid for by the
city, such ordinance must appropriate a specific sum
of money out of the city treasury to cover the lia-
bility incurred by the city in carrying out the provi-
sions of such ordinance.   Subdivision 4, section 14, of
article 6 of said charter further provides that when
any lands are located in a benefit district which are
not liable to special assessments, the city must pay
whatever special assessments would have been assessed
against said non-assessable lands if the same had been
private property.

The non-taxable lands in the benefit district es-
tablished to improve Twentieth street are a part of
Hyde Park, and the appropriation before referred to
was made to cover the city's share of the expense of
improving said street in front of the park.

The appropriation mentioned turned out to be
more than a thousand dollars larger than was neces-
sary to cover the city's part of improving Twentieth
street, but that did not harm defendants in any way.

Section 27, article 6, of the charter of St. Louis
provides that all contracts for public improvements
shall be advertised and let to the lowest responsible

bidder, so that it is perfectly apparent that the legislative department of said city could not foresee what the bids of the contractors would be, nor in any way ascertain the precise cost of improving Twentieth street.

Because the municipal assembly acted with abundant caution in appropriating a larger sum than was necessary would constitute no warrant for spending the surplus of that appropriation in paying special taxes on property of defendants or other private persons.

All of the costs of improving Twentieth street which were legally chargeable against the city of St. Louis were paid out of the appropriation, and the contention of defendants that the remainder of said appropriation should have been applied on said improvements must be disallowed.

II.   The contention of defendants that Twenty-first street was ignored by the officers of St. Louis City in establishing the boundaries of the benefit district for improving Twentieth street, in Twenty-first Street. which benefit district part of defendant's lands were placed, calls for a consideration of the evidence tending to show the establishment of Twenty-first street.

It is not denied that Twenty-first street has been duly established as a public thoroughfare from Salisbury street up to the south boundary of defendants' land for a long time—perhaps as long as twenty-five years. The place where said Twenty-first street would pass through the lands of defendants, if it had continued in a straight northwardly course parallel with Twentieth street, had been a stone quarry. It had not for more than twenty years been fenced or otherwise used by defendants; in fact, it was merely a large excavation between forty and fifty feet deep through which pedestrians could and did pass at pleasure, but

through which vehicles could not pass on account of the unevenness of the surface.

The evidence shows that defendants permitted the city, and perhaps others, to dump dirt into this abandoned stone quarry until it was filled up about half way across defendants' lands. After that, and during about the seven or eight years next before the improvement of Twentieth street was begun, wagons going north on Twenty-first street could pass over that part of the aforesaid excavation which had been filled by the dumping of dirt therein, and then pass westward over defendants' land lying between the excavation and Florissant avenue. The great preponderance of evidence is that the quarry or excavation had not been filled up sufficiently to permit wagons to pass entirely across that part of defendants' land, which they now contend was a street, prior to the improvement of Twentieth street. Defendants' lands lying in the excavation, as well as their lands lying between the excavation and Florissant avenue, were unfenced, and the public seems to have driven over such part thereof as suited its convenience during a period of about seven or eight years prior to the improvement of Twentieth street.

There was no legal dedication or conveyance to the city of that part of defendants land which they now claim was a part of Twenty-first street prior to the issuance of plaintiff's tax bills for improving Twentieth street.

One of the defendants testified that he put up a sign in the quarry notifying the public that newspapers and ashes must not be dumped there; also that he "let" the city dump dirt there.

On April 2, 1906, the municipal assembly of St. Louis enacted another ordinance providing for the opening of Twenty-first street, and ordered the city counselor to institute condemnation proceedings to open said street through the lands of defendants. For

some reason not shown the suit to condemn the right of way for said Twenty-first street was not instituted until December 11, 1906. A hearing was given before commissioners to ascertain what damages should be awarded to land-owners for opening said Twenty-first street, at which the defendants appeared and asserted that they would be damaged by the opening or establishment of such street through their property. They were allowed $81 as net damages over and above the benefits they would receive through the opening of Twenty-first street, and about the month of October, 1907, they accepted the $81 damages which had been awarded to them for the taking of or injury to their property as aforesaid.

One of the defendants testified at the trial of this case as follows:

"Q. When this [Twenty-first street] was condemned as a street did you appear before the commissioners and testify as to the damages you were to get? A. Yes, sir.

"Q. And you got damages on Twenty-first street? A. Yes, sir, we got damages.

"Q. Who appeared for you before the commissioners? A. I and my brother. . . .

"Q. You didn't claim then that it was a public street? A. No.

"Q. Do you claim that now? A. I don't claim it as a public street. I say it was used by the public."

Defendants introduced receipts for State, city and school taxes paid by them during the years 1899 to 1907 showing that they had paid taxes on land fronting on Twenty-first street or "pro Twenty-first street" (meaning proposed Twenty-first street). These receipts are not copied into the record, and it is impossible to tell which of them refer to it as a completed street.

Defendants also introduced a large number of deeds which contain recitals indicating that there was a Twenty-first street through their lands when such deeds were executed. The names of the grantors and grantees in those deeds are not recited in the abstract of record before us, so it is difficult to say what probative force those deeds possess. If they were made by or to the city, or even by or to the defendants, they might throw some light on the issues, but with no showing as to who made or received such deeds they are of little or no value as evidence in this case. There were also several plats introduced in evidence which are not reproduced in the abstract, and as this is an equity case (made so by the answer of defendants) we would probably be justified in dismissing the appeal because all the evidence is not brought here by appellants. [Vandeventer v. Goss, 190 Mo. 239.]· However, as a matter of grace, rather than proper legal procedure, we have read and considered all the evidence before us and made a diligent effort to correctly weigh the same.

Defendants' resourceful counsel has filed a scholarly brief, citing some thirty cases to sustain his assertion that on the facts we have recited, Twenty-first street had become a public street, (1) by dedication, (2) by prescription, and (3) by condemnation, before Twentieth street was improved and plaintiff's tax bills issued.

The defendants' brief is all right, but, unfortunately for him, his evidence does not sustain the legal propositions upon which he relies.

The demand made by defendants for damages growing out of the condemnation of the right of way for Twenty-first street through their land is a very significant fact, and is so wholly inconsistent with their theories as to amount almost to a complete estoppel against their claim that they had previously dedicated, or even intended to dedicate, Twenty-first

street to the city, or that the city had acquired title by prescription to that part of said street which was afterwards condemned through their land. We do not deem it worth while to comment at length upon the evidence, a synopsis of which is herein set out, except to say that it preponderates with the contention of plaintiff that defendants retained the title to the strip of land through their property until such title was divested by the condemnation proceedings.

The matter of improving Twentieth street, like the condemnation of Twenty-first street, seems to have proceeded very slowly. The evidence discloses that the plat fixing the boundaries of the benefit district for the improvement of Twentieth street was approved by the municipal assembly of St. Louis on April 1, 1902, while the ordinance directing the letting of the contract for that improvement was not enacted until November 21, 1905. The date of letting the contract is not proven. The contract must have followed within a reasonable time after the enactment of the last-mentioned ordinance, as the tax bills evidencing the completion of the work were issued to plaintiff on November 8, 1906. Defendants complain bitterly because the city did not bring and prosecute to final judgment the proceeding to open Twenty-first street before it formed the benefit district for improving Twentieth street and issued the tax bills. To have done so would have resulted greatly to the advantage of defendants by reducing the area of their lands which could be taxed to improve said Twentieth street.

We are unable to find any evidence in this record indicating that delay in condemning and opening Twenty-first street was a matter of caprice or fraud on the part of the officers of St. Louis. No such charge is contained in defendant's answer.

It is a well-known fact that there is always a greater demand for public improvements in cities and towns than there are public funds to pay for same.

The city cannot afford to open more streets than it can provide money to keep in repair.

The condemnation proceedings to open Twenty-first street were not begun until December 11, 1906, and the final decree in that case only relates back to the institution of the suit. [Ross v. Gates, 183 Mo. 339, l. c. 348.] At that time Twentieth street had been fully improved and the tax bills which form the basis of plaintiff's judgment had been issued and become a special lien against the lands of defendants. [St. Louis v. Clemens, 36 Mo. 467, l. c. 473; Anderson v. Holland, 40 Mo. 600; Everett v. Marston, 186 Mo. 587.] The opening up of an additional street after that date could not destroy any part of the lien which had already attached to defendant's lands. Therefore, their second contention must be disallowed.

III. Defendants also attack the form of the decree in this case, because it awards the plaintiff a lien on their lands and does not directly dispose of that

**Decree.** part of defendants' answer which demands a cancellation of the tax bills casting a cloud on their title. The finding and decree of the trial court necessarily implies that all the defenses interposed to its rendition were disallowed.

For the trial court to have gone through the useless formality of discussing in its decree the defenses pleaded in the case would be as much a waste of time and space as for this court to extend the present opinion to one hundred pages in an effort to convince defendants' attorneys that the propositions they urge in this case are unsound.

There is no reversible error in the record, and the judgment of the trial court is affirmed.

*Walker* and *Faris, JJ.,* concur.