In the Matter of Proceedings Condemning and Taking CERTAIN LANDS IN KANSAS CITY, CLAY COUNTY, Missouri, for Public Use for Park Purposes, providing for Just Compensation Therefor by Special Assessments upon Real Estate and Establishing the Benefit District Therefor under Ordinance of Kansas City, No. 19358, Passed August 12, 1955.

CITY OF KANSAS CITY, Missouri, Respondent,

v.

ZAJIC LAKES DEVELOPMENT COMPANY, Appellant.

No. 48478.

Supreme Court of Missouri,

Division No. 1.

March 13, 1961.

Williams & Norton, North Kansas City, for appellant.

Richard H. Koenigsdorf, City Counselor, Herbert C. Hoffman, Associate City Counselor, Maurice E. Benson, L. B. Saunders, Asst. City Counselors, Kansas City, for respondent.

HOUSER, Commissioner.

This is an appeal from the final orders of the Circuit Court of Clay County on motions for the distribution of a part of the proceeds of the condemnation of certain land in Kansas City. The City of Kansas City condemned a large number of tracts for a public park. Included was land belonging to Zajic Lakes Development Company (hereinafter "the landowner"). The landowner was awarded $64,475 and the amount of the award, together with the other awards, was paid into the registry of the court. The landowner drew down all of the award except $8,566.55, which the city claimed should be applied to the payment of certain special tax bills issued against the land for benefits thereto caused by the establishment of a sewer district in which the land was located. Both city and landowner filed motions for distribution of the $8,566.55. The court sustained the city's and overruled the landowner's motion, and the latter appealed.

We have jurisdiction because the amount in controversy exceeds $7,500, the notice of appeal having been filed prior to January 1, 1960. See § 477.040, RSMo 1949, as amended Laws 1959, S.B. No. 7 § 1, V.A. M.S.

On August 12, 1955 the city enacted Ordinance No. 19358 for the condemnation of approximately 250 tracts of land for a public park. On March 2, 1956 the city enacted four ordinances establishing a joint sewer district, in which provision was made for the issuance of special tax bills against property in the district. Both proceedings included the tract belonging to landowner. Pursuant to Ordinance No. 19358 condemnation proceedings were filed on April 16, 1956. Before the trial of the condemnation case and on April 30, 1957 and May 1, 1957, special tax bills were certified to the director of finance of the city, and issued by the city against the lands in the sewer district, including landowner's tract. At the trial of the condemnation case, on June 12, 1957, counsel for both parties requested the common law jury to add $8,400 (the amount then due for special sewer assessments against landowner's tract) to the damages to be awarded. In his opening statement to the jury counsel for the city stated that this tract was located in the Rock Creek Joint Sewer District; that the landowners would have to pay for the sewer, and that "it would be unfair to this man to take his land and then make him pay the sewer bill which he has, * * * an $8,400 sewer bill, and so we're going to ask you after you have heard the estimate of damages for the taking * * * to add $8,400 to that, because when a sewer bill is once issued, it must be collected and the city will then turn around and make a claim against that for the $8,400 * * *"; that it would not be fair "to take his land and ask him to pay the sewer bill. * * * It would simply be an injustice to ask him to pay it after he got a sewer bill where the city would take the property." And in his closing argument to the jury counsel for the city said that the testimony of the witness Davis was that "the property is worth $38,000, and he added $8,400, which we requested him to add because there is a sewer tax bill which has been issued and as most of you may know, when a sewer tax bill is issued by the municipal government, it has to be paid, it can't be cancelled, and for that reason we requested this witness to include the $8,400 sewer bill. Now, we did that because we think it's fair. * * *" Counsel for landowner, in his opening statement, in totaling up the amount of the damages sought, reached a figure of $108,000 for the various lots, to which he added "the sewer tax bill that they've asked you to, and you come up with $116,400. * * *" On June 20, 1957 the jury returned a verdict for landowner for $64,475. On October 14, 1957 the general condemnation verdict was returned, adopting and confirming the verdict of the common law jury. On January 31, 1958 the city filed its motion for distribution of funds to satisfy the city's liens for general taxes for the year 1957 (since settled and not an issue on this appeal) and for the aforesaid special assessments,

which with interest amounted to $8,566.55. On February 6, 1958 the court rendered judgment confirming the verdict of the jury of October 14, 1957 and fixing the total amount of awards (including landowner's award of $64,475) at $1,378,050.24. The city paid the latter sum into the registry of the court on the same day, February 6, 1958. The decree provided that the city have and hold all the lands condemned, "subject to all city, county and state general taxes falling due after January 1, 1958, and all special taxes levied after October 14, 1957." On March 17, 1959 landowner applied for and later obtained distribution of the award, less $8,566.55 retained by the court pending disposition of the motions for distribution. On November 6, 1959 the court sustained the city's motion for distribution, overruled the landowner's motion, and landowner appealed.

Landowner's sole point is that the trial court erred in distributing this sum to the city; that the landowner is not responsible for the payment of the special sewer taxes because title to the land was in the city when the special assessment ripened into a lien; the city's power to tax landowner or establish a lien on the property was suspended; the city is responsible for the payment of the assessment, and the landowner is entitled to the balance of the award remaining in the hands of the court. Landowner maintains that under the doctrine of relation back the title to the land reverted to the city as of the date of appropriation, and claims that the date of appropriation was the date the condemnation petition was filed, April 16, 1956. Both parties concede that under the Kansas City charter special tax bills become a lien upon the date of their certification to the director of finance. Landowner contends that since the city had title to the property on April 30, 1957 its power to establish a lien thereon was suspended; that the city cannot by condemnation take away with one hand, and at the same time tax with the other; that it would not be just compensation to take a man's land away from him and at the same time, while condemnation proceedings are pending, compel him to pay special assessments thereafter levied on the land, based upon benefits to the property.

The basic premise of landowner's argument is that title to the land had passed to and vested in the city prior to April 30 and May 1, 1957, when the special assessment levied by the city ripened into a lien. This premise is without foundation. Article I, Section 26, Constitution of Missouri, 1945, V.A.M.S., provides that until just compensation "shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested." Section 156 of the Charter of Kansas City provides that "The verdict * * * shall be confirmed * * * and judgment entered thereon that the city have and hold the property * * * upon payment to the parties entitled thereto or into court for their benefit of the compensation awarded * * *" and Section 169 of the Charter of Kansas City provides that "The city shall not be entitled to the possession of any lot * * * until full payment of the compensation therefor, as determined, be made, or paid into court * * * and upon such payment as aforesaid, such circuit court * * * shall immediately order * * * that the title in fee * * * be divested out of such owner and other persons interested and vested forever in the city. The court shall thereupon, without delay, put the city in possession thereof." The preliminary proceedings by which the amount to be paid is ascertained in a condemnation case amount to nothing unless they culminate in actual payment, and until divested by the judgment in condemnation and until compensation is paid, the title to the land remains vested in the landowner and the owner's rights remain unimpaired. Kansas City v. Ward, 134 Mo. 172, 35 S.W. 600; Buchanan v. Kansas City, 208 Mo. 674, 106 S.W. 531, 15 L.R.A.,N.S., 834; Jasper Land & Improvement Co. v. Kansas City, 293 Mo. 674, 239 S.W. 864. Under the constitu-

tion and charter title did not pass to the city until February 6, 1958, the date on which the amount of the award was paid into the registry of the court. The lien of the special tax bills had attached more than nine months prior to that date, at a time when the title was in the landowner.

■ Landowner seeks to avoid the force and effect of these holdings by resort to the doctrine of relation, or "relation back," contending that the passage of title reverted back from the date of the payment of the award to the date of the appropriation, which landowner says is the date of the filing of the petition in condemnation, April 16, 1956. It is true that for some purposes and under certain circumstances it has been said that the judgment of condemnation relates back to the institution of condemnation proceedings. Ross v. Kendall, 183 Mo. 338, 81 S.W. 1107, 1108; Perkinson v. Weber, 251 Mo. 186, 157 S.W. 961, 964, (divisional opinions); and see Millhouse v. Drainage Dist. No. 48 of Dunklin County, Mo.App., 304 S.W.2d 54, 58. On the other hand, this Court, sitting en banc in Municipal Securities Corporation v. Kansas City, 265 Mo. 252, 177 S.W. 856, and the Kansas City Court of Appeals in In re Paseo, 78 Mo.App. 518, both involving condemnation proceedings under the Charter of Kansas City, stated that upon payment of the money the title of the property owner is divested and the title of the city attaches by relation back to *the date of the judgment confirming the verdict of the jury assessing the damages.* Landowner, however, is not entitled to invoke the doctrine of relation, which is merely a fiction of the law supplied when necessary to promote justice. Jasper Land & Improvement Co. v. Kansas City, supra, 239 S.W. loc. cit. 866. To extend the benefit of the doctrine of relation to landowner would not promote justice by relieving landowner from an unjust assessment, under the facts of this case. On the contrary, its application here would wreak an injustice by enabling landowner to have its cake and eat it too, for the reason that the spe-

cial tax bill was considered, and added to the award, in the assessment of compensation. In fixing the value of the land the jury was told, by counsel for both sides, to take into account the $8,400 sewer tax bill, and to add it to the amount awarded. In Ross v. Kendall, supra, the assignee of special tax bills sued to apply part of the proceeds of the condemnation of certain land to the payment of the tax bills. At the trial of the condemnation case the landowners had appeared and had given evidence of the value of the land *including its enhanced value by reason of the improvement,* and in fixing the value of the land the jury had taken into account such enhanced value (although, as in the instant case, the jury did not state it separately in its verdict). In Ross v. Kendall the landowners sought to invoke the doctrine of relation back, but this Court refused to apply the fiction, recognizing that the landowners' claims in this regard were immaterial for the reason that, among other things, "the defendants have recovered from the city the enhanced value of the land caused by the improvement." 81 S.W. loc. cit. 1108. Commenting on this feature of the case this Court, in Municipal Securities Corporation v. Kansas City, supra, 177 S.W. loc. cit. 861, pointed out that in Ross v. Kendall " * * * the jury, which sat in the condemnation suit, took into account and added to their award, the increase in value of the condemned property by reason of the identical improvement represented by the tax bills there sued on. Manifestly then no two views could exist as to the right of the holder of the tax bill to recover such excess sum so held out of the award by the city. * * * "

When the city paid the money into the registry of the court, thereby electing to have and hold the land and pay the compensation previously fixed, the special tax assessments were due and owing by the landowner, and had ripened into a lien on the land. When the money was paid into court it stood in the place of the condemned land, and the landowner had the same rights in

the money that it previously had in the land. Ross v. Kendall, supra. An additional $8,400 had been added to the award for the express purpose of paying the special tax bills. In these circumstances the circuit court properly ruled that the $8,566.55 remaining in the registry of the court be applied to the satisfaction of that lien, and not be disbursed to the landowner.

The judgment is affirmed.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All the Judges concur.